1    Jesse A. Buss, OSB No. 122919
     Willamette Law Group, PC
2    411 Fifth Street
     Oregon City OR 97045-2224
3    Tel: 503-656-4884
     Fax: 503-608-4100
4    Email: jesse@WLGpnw.com

5    Karl G. Anuta, OSB No. 861423
     Law Office of Karl G. Anuta, P.C.
6    735 S.W. First Ave.
     Portland OR 97204
7    Tel: 503-827-0320
     Fax: 503-386-2168
8    Email: kga@integra.net

9    *Attorneys for Plaintiffs Thrive Hood River, Oregon Wild, Sierra Club, Oregon Nordic Club,*
     *Friends of Mount Hood, Oregon Kayak and Canoe Club, and Mike McCarthy*

10

11                    UNITED STATES DISTRICT COURT

12                    FOR THE DISTRICT OF OREGON

13                          PORTLAND DIVISION

14   THRIVE HOOD RIVER, OREGON WILD,          Case No.  3:22-cv-01981
     SIERRA CLUB, OREGON NORDIC CLUB,
15   FRIENDS OF MOUNT HOOD, OREGON            **COMPLAINT FOR DECLARATORY**
     KAYAK AND CANOE CLUB, and MIKE           **AND INJUNCTIVE RELIEF, VACATUR**
16   McCARTHY,                                **OF ILLEGAL AGENCY DECISION**

17                    Plaintiffs,             (Pursuant to the Administrative Procedure Act,
                                              the National Environmental Policy Act, and the
18             v.                             Omnibus Public Land Management Act of
                                              2009, as amended by the Mt. Hood Cooper
19   META LOFTSGAARDEN, Forest Supervisor     Spur Land Exchange Clarification Act of 2018)
     for the Mt. Hood National Forest, and the
20   UNITED STATED FOREST SERVICE,

21                    Defendants.

22

23

     Page 1:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.    Thirteen years ago, in 2009, Congress passed legislation directing the Forest Service to complete the Government Camp/Cooper Spur Land Exchange on Mt. Hood. The legislation, and the land exchange it described, were intended to resolve a decades-long dispute over the future of the north side of Mt. Hood, namely: whether the relatively undeveloped north side should be conserved to protect wildlife habitat and water quality, or instead developed in a way that includes a destination ski resort (along with all the foreseeable ancillary development it would bring to the area). The legislation resolved that dispute in favor of conservation: the north side would be protected from development via a public-private land exchange. Because it would so fully protect the north side of Mt. Hood from undesirable development, the land exchange mandated by Congress became known as the "Clean Sweep."

2.    The Clean Sweep has never been implemented, and without action from this Court it never will. This year the Forest Service decided to move forward with a land trade with its private partner, Mt. Hood Meadows ("Meadows"). Unfortunately, the land trade that the Forest Service approved does not implement the Clean Sweep. Going against Congress's instructions, the proposed trade will not protect the north side of Mt. Hood from commercial development. Plaintiffs, several of whom helped draft and negotiate the settlement that led to the legislation and the Clean Sweep, now bring suit to enforce the legislation and the Congressional intent behind it. As explained below, the Forest Service's land exchange is unlawful as proposed, and must be enjoined. On remand, the Forest Service should adopt a revised land exchange plan that complies with the law and protects the north side of Mt. Hood.

3.    This action is brought by Thrive Hood River, Oregon Wild, the Sierra Club, the Oregon Nordic Club, Friends of Mount Hood, Oregon Kayak and Canoe Club, and Mike

Page 2:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1  McCarthy (collectively "the Conservation Plaintiffs"). The suit is against Meta Loftsgaarden,

2  Forest Supervisor for the Mt. Hood National Forest, and the United States Forest Service

3  (collectively "Defendants" or "the Forest Service"). The Conservation Plaintiffs seek vacatur of

4  an illegal agency decision, as well as declaratory and injunctive relief under the Administrative

5  Procedure Act (APA) (5 U.S.C. §§ 551 *et seq*.). Specifically, the Conservation Plaintiffs

6  challenge the Forest Service's May 3, 2022, final Record of Decision (ROD) approving a

7  Government Camp/Cooper Spur Land Exchange ("the Proposed Exchange"), as well as the

8  underlying Environmental Impact Statement (EIS). The ROD and the EIS violate the National

9  Environmental Policy Act (NEPA) (42 U.S.C. §§ 4321-4370(h)) and the Omnibus Public Land

10  Management Act of 2009 (Pub. L. 111-11, 123 Stat. 1018), as amended by the Mt. Hood Cooper

11  Spur Land Exchange Clarification Act of 2018 (Pub. L. 115-110, 131 Stat. 2270).

12
                               **JURISDICTION AND VENUE**
13
14        4.      This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 701-706

15  (APA) and 28 U.S.C. §§ 1331 (federal question). The Conservation Plaintiffs have challenged a

16  final agency action as defined by § 704 of the APA, and have exhausted all required

17  administrative remedies provided by the Forest Service.

18        5.      Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because

19  Defendant Mt. Hood National Forest Supervisor Meta Loftsgaarden resides in this district, and

20  because the events or omissions giving rise to the claims occurred in Oregon.

21        6.      This case is properly filed in the Portland Division of this District pursuant to

22  Local Rules 3-2 and 3-3 because the Mt. Hood National Forest Supervisor who signed the

23  challenged ROD is headquartered in Sandy, Clackamas County, Oregon.

Page 3:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

**PARTIES**

1

2      7.      Plaintiff THRIVE HOOD RIVER, also known as the Hood River Valley

3    Residents' Committee, Inc., is a non-profit corporation organized under the laws of the State of

4    Oregon. THRIVE HOOD RIVER's mission is to protect Hood River's farms, forests, special

5    wild places, and the livability of its cities and rural communities. THRIVE HOOD RIVER is

6    headquartered in Hood River, Oregon.

7      8.      Plaintiff OREGON WILD, also known as the Oregon Natural Resources Council

8    Fund, is a non-profit corporation organized under the laws of the State of Oregon. OREGON

9    WILD's mission is to protect and restore Oregon's wildlands, wildlife, and waters as an enduring

10   legacy for future generations. OREGON WILD is headquartered in Portland, Oregon and

11   maintains field offices in Bend, Eugene, and Enterprise, Oregon.

12     9.      Plaintiff SIERRA CLUB is a non-profit corporation organized under the laws of

13   the State of California. The SIERRA CLUB's mission is: to explore, enjoy, and protect the wild

14   places of the earth; to practice and promote the responsible use of the earth's ecosystems and

15   resources; to educate and enlist humanity to protect and restore the quality of the natural and

16   human environment; and to use all lawful means to carry out these objectives. The SIERRA

17   CLUB has members and offices throughout the country, including in Portland, Oregon.

18     10.     Plaintiff OREGON NORDIC CLUB, Inc., is a non-profit corporation organized

19   under the laws of the State of Oregon. The OREGON NORDIC CLUB is dedicated to promoting

20   greater participation in, and understanding the value of, outdoor recreation, with an emphasis on

21   Nordic and backcountry skiing. The OREGON NORDIC CLUB has its physical address in

22   Beaverton, Oregon.

23     11.     Plaintiff FRIENDS OF MOUNT HOOD, Inc. is a non-profit corporation

Page 4:       COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1    organized under the laws of the State of Oregon. FRIENDS OF MOUNT HOOD is dedicated to

2    monitoring development and management of national forest lands on Mount Hood. It is

3    especially interested in protecting the alpine meadows, wetlands, streams, wildlife, and forested

4    slopes on the mountain. FRIENDS OF MOUNT HOOD has its physical address in Portland,

5    Oregon.

6         12.    Plaintiff the OREGON KAYAK AND CANOE CLUB, Inc. is a non-profit

7    corporation organized under the laws of the State of Oregon. One of the organizational missions

8    of the OREGON KAYAK AND CANOE CLUB is to support conservation and protection of

9    river resources and fair public access. The OREGON KAYAK AND CANOE CLUB has its

10   physical address in Portland, Oregon.

11        13.    Plaintiff MIKE McCARTHY is an individual and resident of Hood River County

12   who owns property near the Hood River County land that is the subject of this dispute, and who

13   owns and operates fruit orchards near said land. MIKE McCARTHY's professional, recreational,

14   spiritual, and aesthetic interests will be harmed if the Proposed Exchange is completed as set

15   forth in the ROD.

16        14.    The Conservation Plaintiffs have members and supporters throughout Oregon,

17   including many who actively participate in governmental decision-making processes involving

18   public lands such as the Mt. Hood National Forest. Further, the Conservation Plaintiffs have

19   members who use the federal lands that are the subject of the challenged land trade. If the land

20   trade is completed and the land that is now public becomes private, those members' interests will

21   be harmed by exclusion from the land. Further, the private development of that land will result in

22   the destruction of the public forest that currently exists there, negatively impacting wildlife that

23   the Conservation Plaintiffs' members would otherwise enjoy observing.

Page 5:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

15.     The Conservation Plaintiffs' supporters, officers, and staff hike, camp, bird watch, view wildlife, photograph scenery and wildlife, and engage in other vocational, educational, scientific observation, and recreational activities in the Mt. Hood National Forest, including the federal lands subject to the challenged land trade.

16.     Furthermore, Plaintiffs McCarthy and Thrive Hood River are currently parties to separate pending litigation in Hood River County Circuit Court involving the "private" Hood River County parcels offered by Meadows to the Forest Service in this case. *Hood River Valley Residents' Committee, Inc. vs. Bd. of Cnty. Commissioners of Hood River Cnty,* Hood River County Circuit Court Case No. 020029 CC. That case involves Thrive's and McCarthy's challenge to a prior land exchange completed between Meadows and Hood River County, and that exchange involved some of the same Hood River County land that is at issue in this federal case. If that state court litigation is successful, then the previous exchange between Meadows and Hood River County may be unwound and the Hood River County property returned to public ownership. The completion of the Proposed Exchange would seriously complicate, if not entirely prevent, that unwinding. In so doing, it would prejudice Thrive's and McCarthy's available legal remedies in the state court case.

17.     Further, Thrive and McCarthy are also parties to a 2005 Settlement Agreement, to which Meadows and the Board of County Commissioners of Hood River County are also parties. The Forest Service has been aware of that agreement for many years, including well before it issued the challenged ROD in this case. The 2005 Settlement Agreement sets forth rights and obligations relating to, among other things, the Clean Sweep land exchange contemplated by the legislation. Completion of the exchange *as currently proposed by the ROD* will interfere with those contractual relationships, rights, and obligations to Thrive's and McCarthy's detriment.

Page 6:          COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1    Specifically, but without limitation, completion of the Proposed Exchange as approved in the

2    ROD will entirely prevent Thrive and McCarthy from obtaining the benefit of their bargain in

3    entering into the 2005 Settlement Agreement.

4        18.    The Conservation Plaintiffs, including their officers, staff, and supporters, reside

5    near and/or regularly visit exchange parcel areas implicated by this dispute. The Conservation

6    Plaintiffs' officers, staff, and supporters derive recreational, inspirational, religious, scientific,

7    and aesthetic benefit from their activities within and around these areas, and intend to continue to

8    use and enjoy these areas frequently and on an ongoing basis in the near and distant future.

9        19.    Each Conservation Plaintiff group has an organizational interest in the proper and

10    lawful management of the Mt. Hood National Forest. Conservation Plaintiffs' aesthetic,

11    recreational, scientific, and spiritual interests have been and will be adversely affected and

12    irreparably injured if the Forest Service affirmatively implements the Proposed Exchange as

13    approved in the ROD (rather than as proposed in the 2005 Settlement Agreement, and the

14    legislation mandating a land trade that followed that Agreement). These are actual, concrete

15    injuries caused by the Forest Service's failure to comply with mandatory duties under the

16    National Environmental Policy Act, the Omnibus Act, the Clarification Act, and other federal

17    laws. These injuries would be redressed by the relief sought.

18        20.    Conservation Plaintiffs have participated extensively in administrative actions to

19    protect their interests with regard to the parcels proposed for exchange. Plaintiff's actively

20    participated in the administrative process for the current Proposed Exchange and have exhausted

21    any and all available administrative remedies. Reviewable final agency action exists that is

22    subject to this Court's review under section 702 and 704 of the APA.

23        21.    Defendant UNITED STATES FOREST SERVICE is an agency of the United

Page 7:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1    States and is a division of the Department of Agriculture, and is charged with managing the

2    public lands and resources of the Mt. Hood National Forest in accordance and compliance with

3    federal laws and regulations. The Service is an agency within the meaning of the APA, 5 U.S.C.

4    § 551.

5         22.    Defendant META LOFTSGAARDEN, Forest Supervisor for the Mt. Hood

6    National Forest, signed the challenged ROD and is the official responsible for deciding whether

7    the Proposed Exchange is compliant with law. Defendant META LOFTSGAARDEN is sued

8    only in her official capacity.

9

10                    **STATUTORY AND REGULATORY FRAMEWORK**

11               **National Environmental Policy Act (42 U.S.C. §§ 4321-4370(h))**

12        23.    Congress enacted the National Environmental Policy Act ("NEPA") in 1969,

13    directing all federal agencies to assess the environmental impacts of proposed actions that

14    significantly affect the quality of the human environment. According to 42 U.S.C. § 4321, NEPA

15    seeks to "promote efforts which will prevent or eliminate damage to the environment and

16    biosphere and stimulate the health and welfare of man." The regulations implementing NEPA [1]

17    make it clear that NEPA obligates agencies to make available to the public high-quality

18    information, including accurate expert analyses, expert agency comments, and public comments,

19    before decisions are made and before actions are taken. NEPA's public disclosure goals, as

20    _____

21    [1]      The NEPA regulations are promulgated by the Council on Environmental Quality (CEQ)

22    and are binding on the Forest Service. In September 2020 the CEQ amended the NEPA
         regulations, but the Service conducted its NEPA analysis under the prior version of the NEPA

23    regulations because of when the NEPA process for the challenged decision began.

1    articulated in 42 U.S.C. §§ 4321, 4332, are twofold: (1) to ensure that the agency has carefully

2    and fully contemplated the environmental effects of its action; and (2) to ensure that the public

3    has sufficient information to review, comment on, and challenge (if necessary) the agency's

4    action.

5       24. The Court reviews agency actions taken pursuant to NEPA under the APA.

6       25. Under 42 U.S.C. § 4332(C), NEPA requires all federal agencies to prepare a

7    "detailed statement" assessing the environmental impacts of all "major Federal actions

8    significantly affecting the quality of the human environment." This statement is known as an

9    Environmental Impact Statement (EIS).

10

11    *EIS Requirements*

12       26. An agency must prepare an EIS if the agency determines that the proposed action

13    has the potential to significantly affect the environment.

14       27. An EIS must adequately: (1) describe the agency's need for the proposed action;

15    (2) include an analysis of the environmental impacts of the proposed action and its alternatives;

16    and (3) consider the direct, indirect, and cumulative impacts resulting from all past, present, and

17    reasonably foreseeable future actions. In other words, before taking a major action, an agency

18    must take a hard look at why action is needed, its reasonable alternatives, and the environmental

19    consequences.

20    *United States Forest Service Project-Level Pre-decisional*
21    *Administrative Review Process Regulations (36 C.F.R. Pt. 218)*

22       28. The Forest Service regulations at 36 C.F.R. § 218.1 establish a pre-decisional

23    administrative review process (also known as the "objection" process) for proposed actions of

Page 9:  COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1  Forest Service projects documented with a Record of Decision.

2      29.    Objections are written documents seeking pre-decisional administrative review of

3  a proposed project documented with an EIS and can be filed by those who have submitted

4  written comments to the specific project during the commenting opportunity.

5

6  ### The 2009 Omnibus Act (Public Law 111-11, 123 Stat. 1018) and the 2018 Clarification Act (Public Law 115-110, 131 Stat. 2270)

7      30.    In 2009 Congress passed the Omnibus Public Land Management Act, (Public

8  Law 111-11, 123 Stat. 1018) (the "Omnibus Act"), directing, among other things, the completion

9  of a land exchange (the Clean Sweep) between Mt. Hood Meadows and the Forest Service. As it

10  relates to that land exchange, the Omnibus Act was supplemented in 2018 by the Mount Hood

11  Cooper Spur Land Exchange Clarification Act (Public Law 115-110, 131 Stat. 2270) ("the

12  Clarification Act"). Collectively and as operating together with regard to the Cooper Spur-

13  Government Camp land exchange, the Omnibus Act and the Clarification Act are referred to

14  herein simply as "the Act."

15      31.    The provisions of the Act are attached hereto as Exhibit A. Because Congress

16  crafted and passed the Act specifically for the Mt. Hood land exchange, its provisions are

17  discussed below in Plaintiffs' claims for relief.

18

19  ### Administrative Procedure Act (5 U.S.C. § 701-706)

20      32.    Section 702 of the APA provides a private cause of action to any person

21  "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency

22  action within the meaning of a relevant statute."

23      33.    Under section 704 of the APA, "final agency action" is reviewable. A final

Page 10:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1  agency action is one that marks the consummation of the agency's decision-making process and

2  one by which rights or obligations have been determined or from which legal consequences flow.

3       34.    Under section 706 of the APA, a reviewing court shall hold unlawful and set aside

4  agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion,

5  or otherwise not in accordance with law, or found to be made without observance of procedure

6  required by law.

7       35.    NEPA and the Act do not contain specific judicial review provisions, so the

8  Forest Service's decision is subject to judicial review under the APA.

9

10  **CLAIMS FOR RELIEF**

11  **Plaintiffs' First Claim for Relief**
**(Violations of NEPA and the APA by the Forest Service)**

12       36.    Plaintiffs reallege and incorporate by reference all preceding paragraphs into each

13  of the counts set forth below.

14       37.    Plaintiffs are, if they prevail in this action, entitled to their reasonable costs,

15  litigation expenses, and attorney fees associated with this litigation, pursuant to the Equal Access

16  to Justice Act found at 28 U.S.C. § 2412.

17

18  **<u>Count 1</u>**

19  **(*Flawed Purpose and Need Statement*)**

20       38.    The reasonableness of a purpose and need statement in an EIS is assessed by

21  considering the statutory context of the federal action. In this case, the primary statutory context

22  is the Act, which governs the Proposed Exchange. The purpose and need statement should

23  therefore be entirely guided by the provisions of the Act.

Page 11:     COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

39.     Unfortunately, the EIS defines its objectives in a way that does not accurately reflect the imperatives of the Act, rendering the purpose and need statement unreasonable and unlawful. As a result of this unreasonable purpose and need statement the EIS did not consider a reasonable set of alternatives. Both the unreasonable purpose and need statement and the resulting unreasonable set of alternatives violate NEPA.

40.     Under NEPA, the first thing an agency must define is the project's purpose. In this case, according to the EIS at p.8, "[t]he overall purpose of this project is to comply with the congressional direction and conditions in the Omnibus Act and Clarification Act." Despite that acknowledgment, the EIS identifies several "needs" that go beyond the terms of the Act, as follows:

1.     "[T]he need to account for the direction in [the Act] that triggers the congressional designation of approximately 1,710 acres of existing NFS lands to wilderness upon completion of the exchange," along with the congressional designation of "up to 2,854 acres" as the Crystal Springs Watershed Special Resources Management Unit;

2.     "The Cooper Spur Mountain Resort, if acquired by the Forest Service, will also need to be evaluated for disposition and, potentially, the continued use through the issuance of a special use permit."

These supposed "needs" are inconsistent with the Act. Further, one need that is critical to compliance with the Act, and therefore *should* be included in the EIS's purpose and need statement, is not identified at all.

41.     The first "need" identified above grossly misrepresents the provisions of the Act. While the Act, in section 1205(a)(1)(A), contemplates that *all* of the land "as generally depicted on the map entitled 'Crystal Springs Watershed Special Resources Management Unit,' dated June 2006" be designated as such (which includes *all* of the non-Federal parcels), the EIS at page 8 identifies the Crystal Springs unit as only including "a *portion* of the offered non-Federal lands

1    totaling *up to* 2,854 acres." (Emphasis added). This "need" defines the land exchange in a way

2    that does not ensure the full implementation of the Act (here, section 1205(a)(1)(A)), therefore

3    the "need" is unreasonable under NEPA because it does not properly reflect the statutory context

4    of the project.

5          42.    The second "need" identified above is also invalid under NEPA. That is, it defines

6    itself in such a way that it undermines the purpose and provisions of the Act itself (section

7    1205(a)(1)(A)). By conditioning itself on "if" the Cooper Spur Mountain Resort is acquired by

8    the Forest Service, this purported "need" in the EIS did not ensure that the Forest Service

9    actually *would* acquire the Cooper Spur Mountain Resort. But since the Cooper Spur Mountain

10   Resort property is located within the area that section 1205(a)(1)(A) contemplates being

11   designated as part of the Crystal Spring unit, excluding that property is inconsistent with the Act.

12   This "need" is therefore unreasonable under NEPA.

13         43.    The EIS's purpose and need statement also lacks a need that relates to the

14   Clarification Act of 2018. As amended by the Clarification Act, the Act includes a provision

15   (section 1206(a)(2)(E)(i)) that places emphasis on the "need" to equalize appraised values of the

16   exchanged properties. That language reads: "[I]n addition to or in lieu of monetary

17   compensation, a lesser area of Federal land or non-Federal land may be conveyed *if necessary* to

18   equalize appraised values of the exchange properties[.]" (Emphasis added). The EIS fails to

19   recognize this limitation of the Act, and that failure is reflected both in the alternatives

20   considered by the Forest Service and the preferred alternative selected in the ROD. That failure

21   renders the purpose and need statement unreasonable under NEPA because it does not properly

22   reflect the statutory context (i.e. section 1206(a)(2)(E)(i) of the Act).

23

1                                                     **Count 2**

2            (***The selected alternative does not fulfill the Forest Service's stated purpose and need***)

3                44.       According to the EIS at p.8, "[t]he overall purpose of this project is to comply

4  with the congressional direction and conditions in the Omnibus Act and Clarification Act." The

5  Forest Service's selected alternative, however, does not meet that purpose and need because the

6  congressional direction in the Omnibus Act and the Clarification Act is to exchange *as much of*

7  *the Federal and non-Federal land as possible* while equalizing values. Because the selected

8  alternative does *not* maximize the land exchanged, the selected alternative does not fulfill the

9  Forest Service's stated purpose and need, in violation of NEPA and the APA.

10

11                                                    **Count 3**

12

13               (***Failure to consider an adequate range of alternatives***)

14                45.       The NEPA alternatives analysis, in which an agency evaluates all reasonable

15  alternatives and explains why alternatives eliminated from detailed study were not considered, is

16  the heart of an EIS. In this way, environmental impact statements are meant to meaningfully

     consider alternative actions rather than justify decisions already made.

17                46.       The EIS violates NEPA because it does not analyze all reasonable alternatives and

18  serves only to justify a decision already made. For example, the Forest Service did not consider

19  the following alternatives for equalizing the values of the lands subject to the exchange:

20                1.       Mt. Hood Meadows continues to operate the Cooper Spur Ski Area in a newly-
configured permit size of approximately 50 acres on the same (or new) terms;

21                2.       Mt. Hood Meadows continues to own the Inn at Cooper Spur property (Tract 5)
totaling 2.84 acres, with some provision for water from existing sources;

22

23                3.       A donation by Mt. Hood Meadows; and

                4.       The retention of a possible piece of land adjacent to the Inn at Cooper Spur which

1  consists of forestland surrounding the 2.84-acre parcel (portion of Tract 7) and/or timber harvest
2  on a portion of forestland of Tracts 1, 2, 3 and/or 8 on areas outside of steep slopes, riparian
   areas, the drinking watershed zone of contribution.

3        47.    The problem with the EIS's alternatives analysis extends further. The EIS

4  completely fails to disclose and analyze the various ways in which the appraised values of the

5  exchange properties could be equalized. That is a major failure in light of section

6  1206(a)(2)(H)(i) of the Act, which allows for a lesser area of land to be exchanged "if necessary"

7  to equalize the appraised values, in addition to or in lieu of monetary compensation. Despite that

8  requirement, neither the EIS nor the ROD confront, let alone explain in any meaningful way,

9  how the selected alternative (or any other alternative) is "necessary" to equalize appraised values

10  of the exchange properties.

11        48.    An adequate alternatives analysis, developed with the benefit of the completed

12  and updated appraisals, must consider a reasonable range of different methods to equalize values.

13  Instead, the EIS *does not even discuss the results of the appraisals at all*. As a result, nowhere in

14  the EIS or supporting documents are the appraised values of the exchange parcels discussed or

15  analyzed in any way. To the contrary, without giving any parcel valuation information the EIS

16  baldly states at page 18 that: "The final mix of the Federal parcels and non-Federal parcels to be

17  exchanged (including personal property and improvements to be exchanged, and respective

18  appraised values) will be determined in the final Record of Decision."

19        49.    The ROD itself does contain appraisal *valuation* information, but like the EIS it

20  does not contain, let alone analyze, proposed alternatives involving the exchange of additional or

21  different combinations of parcels that would be consistent with the Act. Instead, the ROD simply

22  states that the East Parcel of Federal land, along with Tracts 4, 5, 6, and 7 of the non-Federal

23  land, will not be conveyed. There are no findings of "necessity" under section 1206(a)(2)(H)(i)

Page 15:      COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1   of the Act, even though such a finding is required if a lesser area of land is to be exchanged. And

2   even if there was such a finding of "necessity" in the ROD, it would be meaningless under

3   NEPA without a consideration in the EIS of alternatives involving an exchange of different

4   parcels, lot line adjustments, lot partitions, different monetary compensation, donation by

5   Meadows, or a combination thereof. For that reason, the alternatives analysis fails to consider a

6   reasonable range of alternatives, is fundamentally flawed, and the EIS violates NEPA.

7       50.     Further, the Forest Service used the EIS merely to justify a decision that it had

8   apparently already made, in violation of NEPA. The Act, in section 1206(a)(2)(G)(i), states that

9   "the Secretary and Mt. Hood Meadows may mutually agree for the Secretary to reserve a

10  conservation easement to protect the identified wetland in accordance with applicable law."

11  However, in the EIS at page iv the Forest Service admits that, prior to completing its NEPA

12  requirements, the agency decided "not to have the wetland conservation easement reserved."

13  Instead of making a pre-NEPA decision regarding the conservation easement, the Forest Service

14  should have considered the easement, or lack of it, as part of the alternatives analysis.

15

16                               **Count 4**

17              (***Failure to publish a complete appendix***)

18      51.     NEPA's regulations, at 40 C.F.R. § 1502.19, require that if an agency prepares an

19  appendix, the agency "shall publish it with the environmental impact statement, and it shall

20  consist of:"

21          (a) Material prepared in connection with the EIS;
            (b) Material substantiating any analysis fundamental to the impact statement;
            (c) Material relevant to the decision to be made; and
22          (d) For final EISs, the public comment summaries and responses.

23

Page 16:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1    Here, the Forest Service did prepare an appendix (EIS at pp.395-455) but it does not include the

2    appraisals prepared for the exchange parcels. Certainly the appraisals are "material relevant to

3    the decision" since they control the values of the exchange parcels for purpose of this project.

4    Accordingly, they should have been included in the appendix. The Forest Service's failure to

5    include them was a violation of NEPA that impaired the public's ability to comment on the

6    appraisals as key components of the EIS.

7

8    **Plaintiffs' Second Claim for Relief**
     **(Violations of the Omnibus Act/Clarification Act and the APA by the Forest Service)**

9    52.    Plaintiffs reallege and incorporate by reference paragraphs 1–35 into each of the

10   counts set forth below.

11

12   **<u>Count 1</u>**

13   (*Improper reduction of the number of Federal and*
     *non-Federal acres subject to land exchange*)

14   53.    The EIS (at page iii) and ROD (at page 2) describe the land trade as involving "*up*

15   *to* 107 acres" of public land for "*up to* 764 acres" of private land, suggesting the Forest Service

16   has broad discretion in deciding how much land to trade. (Emphasis added). That is not,

17   however, what the law provides. Section 1206(a)(2)(H)(i) of the Act allows a "lessor area of

18   Federal land *or* non-Federal land" to be conveyed in the exchange "*if necessary to equalize*

19   *appraised values of the exchange properties*, without limitation" (Emphasis added). The selected

20   alternative is inconsistent with that language because it purports to reduce the amount of both

21   Federal *and* non-Federal land exchanged, instead of just one or the other.

22   54.    Further, the EIS and ROD contain no findings regarding the necessity of those

23   land area reductions to equalize values, and there is no actual need to reduce the exchange

Page 17:    COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1    acreages at all. To correct these problems, the ROD should be modified so that either all 107

2    acres of Federal land, all 764 acres of non-Federal land, or both, are traded in the exchange. And

3    if either acreage amount is reduced to a "lesser area" under section (a)(2)(H)(i) of the Act, then

4    findings and an explanation regarding the "necessity" of that reduction are required. The lack of

5    such analysis requires vacatur by the Court and remand for further agency action.

6

7                           **Count 2**

8              (***The complete appraisals have not been provided to the public***)

9            55.       The Forest Service was required by section 1206(a)(2)(D)(iv) of the Act to "make

10   available for public review the complete appraisals of the land to be exchanged." The Forest

11   Service failed to do so, prejudicing the public's ability to review, comment on, and challenge the

12   appraisals.

13                           **Count 3**

14                  (***The appraisals are unlawfully flawed***)

15            56.       Section 1206(a)(2)(D)(ii) of the Act requires that the appraisals relied upon by the

16   Forest Service in determining the values of the Federal and non-Federal property involved in the

17   land exchange shall be conducted in accordance with "nationally recognized appraisal

18   standards," included the Uniform Appraisal Standards for Federal Land Acquisitions ("the

19   Yellow Book") and the Uniform Standards of Professional Appraisal Practice ("USPAP"). The

20   appraisals relied on by the Forest Service in the ROD do not comply with generally accepted

21   appraisal standards, the Yellow Book, and/or the USPAP. Therefore the Proposed Exchange

22   under the selected alternative is noncompliant with the Act and violates the APA.

23

    Page 18:       COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1            **PRAYER FOR RELIEF**

2            WHEREFORE, Plaintiffs respectfully pray for an order and judgment:

3            a.        Declaring that the Forest Service's ROD and underlying EIS for the Government

4    Camp—Cooper Spur Land Exchange violate NEPA, the Act, and the APA;

5            b.        Vacating and setting aside the Forest Service's ROD as an illegal agency action

6    under the APA and remanding to the agency;

7            c.        Preliminarily and permanently enjoining the Forest Service from implementing

8    the Proposed Exchange as set forth in the current ROD, unless and until the agency complies

9    with NEPA and the Act;

10           d.        Entering appropriate injunctive relief to ensure that the Forest Service complies

11   with NEPA and the Act, and specifically to ensure that the Forest Service and its agents take no

12   further actions toward proceeding with the challenged Proposed Exchange unless and until they

13   have complied with NEPA and the Act;

14           e.        Awarding Plaintiffs their reasonable costs, litigation expenses, and attorney fees

15   associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

16           f.        Granting such further relief as the Court deems just and equitable.

17

            Respectfully submitted this 24th day of December 2022.

18

19                                     */s/ Jesse A. Buss*
                                       Jesse A. Buss, OSB # 122919
20                                     Willamette Law Group, PC
                                       411 Fifth Street
21                                     Oregon City OR 97045-2224
                                       Tel: 503-656-4884
22                                     Fax: 503-608-4100
                                       Email: jesse@WLGpnw.com

23
                                                    *(Continued)*
       Page 19:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF

1

   ___/s/ Karl G. Anuta_____
   Karl G. Anuta, OSB No. 861423
2  Law Office of Karl G. Anuta, P.C.
   735 S.W. First Ave.
3  Portland OR 97204
   Tel: 503-827-0320
4  Fax: 503-386-2168
   Email: kga@integra.net
5
   *Attorneys for Plaintiffs*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Page 20:        COMPLAINT FOR VACATUR, DECLARATORY AND INJUNCTIVE RELIEF