**STEPHEN J. ODELL, OSB #903530**
MARTEN LAW LLP
1050 SW Sixth Ave., Ste. 2150
Portland, Oregon 97204
Telephone: (503) 241-2648
E-mail: sodell@martenlaw.com

*Attorney for Applicant-for-Intervention Mt. Hood Meadows OREG., LLC*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **THRIVE HOOD RIVER; OREGON WILD; SIERRA CLUB; OREGON NORDIC CLUB; FRIENDS OF MOUNT HOOD; OREGON KAYAK AND CANOE CLUB;** and **MIKE MCCARTHY**, <br><br> Plaintiffs, <br><br> v. <br><br> **META LOFTSGAARDEN;** and **UNITED STATES FOREST SERVICE**, <br><br> Defendants. | Case No. 3:22-cv-01981-AR <br><br> **MOTION OF APPLICANT MT. HOOD MEADOWS OREG., LLC, FOR LEAVE TO INTERVENE AS OF RIGHT OR, IN THE ALTERNATIVE, BY PERMISSION OF THE COURT, AND ACCOMPANYING LEGAL MEMORANDUM IN SUPPORT** <br><br> *Oral Argument Respectfully Requested* |

Pursuant to Federal Rule of Civil Procedure 24, Applicant Mt. Hood Meadows OREG., LLC ("Meadows" or "MHMO") hereby respectfully and timely moves for intervention as a defendant in the above-captioned action as of right or, in the alternative, by permission of the Court. Meadows respectfully submits the Court should grant the motion and order that MHMO is entitled to intervene or, alternatively, permit it to do so, on the grounds set forth in the legal

Page 1 – APPLICANT MT. HOOD MEADOWS OREG., LLC'S MOTION TO INTERVENE

memorandum set forth immediately below and the Declaration of Matthew B. Drake ("Drake Declaration") that Meadows also files this date in support of its motion. MHMO is further filing this same date in accordance with Fed. R. Civ. P. 24(c) a proposed Answer to the Amended Complaint (Dkt. #5) in connection with the present motion, and would respectfully request that the Court accept the proposed Answer as MHMO's formal answer upon granting this motion.

In accordance with LR 7-1(a)(1), undersigned counsel for Applicant-in-Intervention MHMO certifies that he reached out to confer with counsel for both Plaintiffs and Federal Defendants in a good-faith effort to determine their clients' respective positions on this motion and that, in response, Plaintiffs' counsel indicated that Plaintiffs would not be able to determine or provide a definitive position on the motion until after having had a chance to review MHMO's proposed answer to be filed along with these moving papers, while Federal Defendants' counsel indicated that Federal Defendants do not oppose this motion.

## <u>MEMORANDUM IN SUPPORT OF MHMO'S MOTION TO INTERVENE AS OF RIGHT OR, IN THE ALTERNATIVE, BY PERMISSION OF THE COURT</u>

## <u>INTRODUCTION</u>

Applicant-for-Intervention MHMO has significant protectable interests at stake in this case and indeed, as the co-party to the Government Camp-Cooper Spur Land Exchange ("Federal Land Exchange") the approval of which Plaintiffs challenge, is effectively the real party-in-interest every bit as much as are the named Defendants who represent the other co-party to the exchange, the United States. Meadows's special status in this regard stems not just from its role as one of the parties to the Federal Land Exchange, but also from the fact that it has invested literally both thousands of hours and hundreds of thousands of dollars toward successful implementation of the exchange. Moreover, the exchange is critical to defend and be fully effectuated from MHMO's perspective because it will allow for a hard-fought and durable

resolution to many pressing issues concerning the future shape of both conservation and development efforts on the mountain that have been stalemated for decades and, in so doing, provide significant public benefits, including adding 1700 acres of high-value forestland to an existing wilderness area and creating a new special watershed protection management unit in the Mt. Hood National Forest while also allowing for development of additional highly needed housing units adjacent to the already developed area of Government Camp that will serve both the local workforce and the mountain's recreational users, features that led to a strong consensus of support for the exchange in the Oregon congressional delegation.  Although as the existence of this case attests, the exchange did not resolve every last issue that a few groups have concerning their preferred future vision for the mountain, it nevertheless provides a balanced, fair, durable, legally compliant, and clear path forward that all interested parties had ample opportunity to help craft.  In this light, Meadows feels compelled to simply not idly sit back and allow Plaintiffs' apparent goal in bringing this case to flush two decades of voluminous effort down the drain simply because they did not ultimately get 100 percent of the loaf they wanted.

Nor, with respect, can Federal Defendants adequately represent or protect MHMO's interests in this case.  As an initial matter, it is Meadows, and not the United States, who is a party to the 2005 Settlement Agreement out of which grew the legislation that conditionally prescribed the Federal Land Exchange at issue, and thus, Meadows can provide valuable perspective and necessary balance to the welter of allegations that Plaintiffs proffer in their Complaint regarding the background to this case.  Moreover, Meadows and its counsel also worked cooperatively with Plaintiffs and their counsel in drafting the legislation prescribing and providing conditions and direction for the exchange.  Finally, as the co-party to the exchange, Meadows stands in the converse position to Federal Defendants insofar as it is conveying the

lands the Forest Service will receive and will receive the lands the Forest Service is conveying.

For all these reasons, MHMO is uniquely positioned to shed valuable light on many of the key

issues underlying the effects analyzed in the Environmental Impact Statement ("EIS") that the

Defendant USDA-Forest Service prepared in connection with implementing the exchange and

the claims that Plaintiffs are pursuing to challenge the Federal Land Exchange.

Meadows also seeks intervention in a timely fashion especially insofar as Federal

Defendants are not required to lodge the administrative record still for some seven weeks, and no

motions or other substantive filings have been made.  Thus, as explained more fully below,

MHMO meets all the necessary criteria to intervene under both Federal Rule of Civil Procedure

24(a) and (b), and respectfully submits that this Court should therefore grant its motion and rule

that MHMO is entitled to intervene as of right or, in the alternative, grant it permission to do so.

## FACTUAL BACKGROUND

As described in more detail below, the Federal Land Exchange has been in the making

and subject to extensive consideration, analysis, public involvement, two separate acts of

Congress, and administrative implementation for nearly 20 years now.  The long train of those

efforts is summarized in the Declaration of Matthew B. Drake that Meadows submits in support

of its motion.  Declaration of Matthew B. Drake (July 17, 2023) ("Drake Declaration").

The genesis of these efforts was a 2005 Settlement Agreement among Meadows,

Plaintiffs HRVRC[1] and McCarthy, and the County that was the result of six days of intensive

mediation in June 2005.  Exh. 1 to Drake Declaration.  At a broad scale, the 2005 Settlement

Agreement provided for Plaintiffs to initially abate and then eventually dismiss their state court

---

[1]  For ease of reference and to avoid confusion, this brief shall hereafter refer to this Plaintiff as
"Thrive," even during the earlier period when it went by its previous name of Hood River Valley
Residents Committee or HRVRC, except when the latter is referenced within quotation marks.

Page 4 – APPLICANT MT. HOOD MEADOWS OREG., LLC'S MOTION TO INTERVENE

proceedings on the basis of which all of the settling parties agreed to support a so-called "Proposed Solution," calling for Meadows to propose and seek to complete with the Forest Service a new, further land exchange of virtually all of Meadows's properties on the north side of the mountain in Hood River County for two developable parcels near Government Camp on mountain's south face in Clackamas County. Drake Declaration at ¶6. Paragraphs 15 and 16 of the agreement expressly provide that the proposed exchange may be effectuated via either legislative or administrative means and that, if the parties agree to pursue the former, they will either request legislative counsel to draft the proposed legislation or jointly draft it themselves. Exh. 1 to Drake Declaration at 12. The 2005 Settlement Agreement also provides that the parties shall not describe or characterize the position of any other party regarding the proposed exchange, or seek to cast blame on any other party in public statements or discussions with the media, and shall only issue public statements or press releases concerning the contents of the Agreement to which all of the parties have agreed. *Id.* at 13. Moreover, the agreement contains elaborate provisions on how appraisal of the properties forming the basis of the Proposed Solution were to be carried out, including that Mr. Steve Hall should conduct the appraisals. Id. at 9-12. Consistent with these last provisions, Mr. Hall completed the initial appraisals for both the federal and non-federal property forming the basis of the Proposed Solution in September 2005. Drake Declaration at ¶ 6.

Plaintiffs Thrive, McCarthy, Hood River County, and Meadows entered into a series of amendments to the 2005 Settlement Agreement the following year ("2006 Amendments to Settlement Agreement"). Exh. 2 to Drake Declaration. Among other things, these amendments included the agreement of the parties to request the Oregon congressional delegation to prepare and pass federal legislation that would adopt the values in the September 2005 appraisals Mr.

Hall completed that the parties expressly approved and agreed satisfied all applicable legal requirements. Drake Declaration at ¶7. The amendments also included a detailed series of other provisions and conditions that the legislation the parties agreed to request the delegation to enact should specify, virtually none of which made it into the legislation as ultimately enacted, including the adoption of the values reflected in the 2005 Hall appraisals. *Id.*

Over the course of the next three years and per one of the options reflected in the 2005 Settlement Agreement to work together cooperatively in the pursuit of legislation to direct the Forest Service to carry out the necessary processes to effectuate the Federal Land Exchange, counsel for the parties were able to work together cooperatively with the Oregon congressional delegation to eventually get the Original Exchange Act enacted into law, on Mar. 30, 2009, as part of the Omnibus Public Land Management Act of 2009. Exh. 3 to Drake Declaration (encompassing Secs. 1202(c)(2), 1205(a), & 1206(a) of Act). Although the Original Exchange Act did not include all of the elements set forth in the 2005 Settlement Agreement, as amended, it did provide direction effectuating the two main features designed to benefit the public at large. These features provide for, upon completion of the exchange: (1) designating an additional approximately 1710 acres to the Mount Hood-Tilly Jane Wilderness Area; and (2) establishing a Crystal Springs Watershed Special Resources Management Unit to protect and provide for clean drinking water for the residents of Hood River County and to ensure visitors can enjoy the special scenic, natural, cultural, and wildlife values of the watershed. *Id.* at 4-5 & 9-12 (§§ 1202(c)(2) & 1205(a)). The Original Exchange Act also expressly provided that any exchange was subject to Meadows's willingness to offer its lands in trade for the federal lands forming the basis of the Proposed Solution. *Id.* at 13 (§ 1206(a)(2)(A)) (conditioning exchange on proviso that, "if Mt. Hood Meadows offers to convey to the United States" the designated non-federal

lands"). It further directed that a new set of appraisals be prepared by an appraiser jointly selected by the Forest Service and Meadows on which the ultimate exchange would be based in lieu of the ones Mr. Hall had previously executed in large measure due to some concerns the Government Accountability Office had raised with Mr. Hall's appraisals in an independent review conducted at the request of the Oregon congressional delegation. Id. at 14 (§ 1206(a)(2)(D)).

Meadows followed up the next year in its efforts to implement the Original Exchange Act by entering into an Agreement to Initiate the Federal Land Exchange ("ATI"). Exh. 4 to Drake Declaration. The ATI sets forth the understanding that the basis for value of the exchange properties shall be appraisals carried out in accordance with the exchange legislation as ultimately reviewed and approved by the Forest Service, and expressly authorizes both the Forest Service and Meadows to withdraw from the exchange process at any time prior to execution of a binding exchange agreement. *Id.* at 1. Exhibits to the ATI provide a detailed description of the respective properties that Meadows and the Forest Service "will consider exchanging." Id. at 4 & 13. A third exhibit sets forth an implementation schedule for the Federal Land Exchange that called for its completion by November 2012, *id.* at 15-18, a full decade prior to its actual approval and the attendant execution of a binding Exchange Agreement committing the Forest Service and Meadows to implement the exchange. Drake Declaration at ¶ 9.

This decade-long lag between the prescribed schedule in the ATI and final approval of the Federal Exchange in large measure resulted from the Forest Service's slow pace in undertaking the necessary administrative processes to bring it to fruition, *id.* at ¶ 10, delays that ultimately led Thrive to decide to pursue a two-pronged approach to streamline and facilitate the exchange's completion, including both litigation to request that the U.S. District Court compel

the agency to carry out its tasks in a timely fashion and pursuing a series of follow-on legislative amendments to the Original Exchange Act. *See* e-mail from Thrive counsel R. Bloemers to M. Drake (June 22, 2015) (Exh. 5 to Drake Declaration). Thrive's then-counsel, Ralph Bloemers, expressly acknowledged in an e-mail to Mr. Drake and MHMO counsel Henry Lorenzen that Plaintiffs' proposed legislative amendments would need to account for the fact that Meadows might well need to retain certain property in Hood River County under the final contours of the Exchange, depending on how the values ultimately sorted out in the final appraisals, which as of that time had yet to be completed. *Id.* Ongoing acknowledgment of this principle and potential outcome was reflected in subsequent e-mails from Mr. Bloemers to Meadows, including by his explicitly calling for every discrete parcel of property encompassed by the Original Exchange Act to be separately valued to allow the parties maximum flexibility in crafting the final contours of the exchange. Exhs. 6-7 to Drake Declaration. These e-mails from Mr. Bloemers ultimately culminated in one to staff for Sen. Wyden and Rep. Blumenauer, members of the Oregon congressional delegation, to which he attached a draft of legislative language that, as he described it, "captures in more detail what was originally intended to occur substantively by HRVRC and Meadows," and was "prepared jointly by counsel for Meadows and HRVRC." Exh. 8 to Drake Declaration. The draft proposed legislative language Mr. Bloemers transmitted to these congressional staff authorized "without limitation" a final exchange encompassing less than all of the federal or non-federal properties identified for exchange in the Original Exchange Act and became the precise legislative text of Section 2(2)(B)(H)(i) of the Mount Hood Cooper Spur Land Exchange Clarification Act, Pub. L. No. 115-110 (Jan. 10, 2018) ("Exchange Clarification Act"), that the Congress eventually enacted in large measure on the basis of the joint recommendation of Thrive and Meadows. Exh. 9 to Drake Declaration at 5.

Page 8 – APPLICANT MT. HOOD MEADOWS OREG., LLC'S MOTION TO INTERVENE

In that vein, the Exchange Clarification Act therefore includes provisions that both direct the final appraisals underlying the Federal Land Exchange to assign a separate value to each parcel of property so as to facilitate the necessary equalization of values (Sec. 2(2)(a)(ii)), and also authorize conveyance of lesser areas of both the federal and non-federal lands encompassed by the originally proposed exchange to the extent necessary to achieve equalization based on the appraised values of the exchange properties, "without limitation" (Sec. 2(2)(B)(H)).  Id. at 2-3.

Consistent with the supplemental direction in the Exchange Clarification Act regarding appraisal of the subject properties, the appraiser the Forest Service selected and to which Meadows offered its consent, Mr. Richard Maloy, needed to update the appraisals that he had originally prepared in October 2017.  Drake Declaration at ¶ 12.  The Forest Service approved the final, revised versions of Mr. Maloy's appraisal reports for both the federal and non-federal properties identified in the Original Exchange Act on November 30, 2019.  *Id.*

Following completion and the Forest Service's formal approval of these final appraisal reports, made available to the public upon request per direction in the Exchange Clarification Act (Sec. 2(2)(A)(iii)), both Plaintiff Thrive and Meadows undertook a careful review of the reports, raising their respective concerns with them to the Forest Service and indicating that neither was entirely satisfied with their ultimate property valuations.  Drake Declaration at ¶ 13.

In addition, consistent with the direction in the Exchange Clarification Act, the Forest Service and Meadows also engaged in discussions during this time frame regarding which configuration(s) of federal and non-federal lands could achieve the necessary equalization parameters based on the values reflected in the updated appraisals while also being feasible for both parties from legal, environmental, and economic perspectives.  Drake Declaration at ¶ 14. These discussions allowed the Forest Service and Meadows the opportunity to thoughtfully

explore myriad exchange permutations potentially consistent with the necessary equalization parameters and determine which ones were inconsistent with one or more applicable legal requirements or otherwise unworkable for either or both of them, in the common pursuit of arriving at the eventual Proposed Action that would well serve the public interest while still being feasible and sustainable over the long-term. *Id.* This approach not only was expressly contemplated by the Exchange Clarification Act, but also reflected the reality that the exchange legislation does not seek to compel Meadows to ultimately engage in any exchange, nor does the ATI that Meadows and the Forest Service executed purport to bind either party to complete an exchange until they execute a formal exchange agreement. *Id.* Meadows also met with representatives of Thrive to learn more about various of its proposals for potentially achieving the necessary equalization criteria for the Federal Land Exchange in both the Federal Land Policy and Management Act and exchange legislation, as well as to hear Thrive's concerns in an effort to see if it would be feasible to accommodate or somehow ameliorate them. *Id.*

Thrive eventually followed up in August 2020 by sending a detailed and one-sided letter to the Hood River County Board of Commissioners, County Administrator, and Community Development Director to provide what it termed an "update" on the Federal Land Exchange. Exh. 10 to Drake Declaration. Among other things, Thrive's letter openly and publicly aired its concerns with the appraisal reports underlying the Federal Land Exchange and attacked their validity. *Id.* at 4. The letter further publicly attacked Meadows and its motives in pursuing the Exchange, *id.* at 4-6, and made numerous unfounded allegations both in that regard and also with respect to what the exchange legislation, as amended, requires. Drake Declaration at ¶ 15. These public statements represent a material breach of Paragraph 20 of the 2005 Settlement Agreement. Exh. 1 to Drake Declaration at 13; Drake Declaration at ¶ 15.

In January 2021, the Forest Service issued a Final Environmental Impact Statement ("FEIS") analyzing the Federal Land Exchange pursuant to the National Environmental Policy Act ("NEPA"). Drake Declaration at ¶ 16. *The Oregonian/OregonLive* ran an article on this development in which Thrive's counsel again attacked the viability of the finally approved appraisal reports and also publicly called out Meadows for its role in implementing the Exchange per the exchange legislation and the terms of the ATI. T. Sickinger, "Mount Hood Land Swap Achieves New Milestone, Generates New Controversy," *The Oregonian* (Feb. 9, 2021) (available at https://www.oregonlive.com/environment/2021/02/mount-hood-land-swap-achieves-new-milestone-generates-new-controversy.html) (last visited July 17, 2023) (Exh. 11 to Drake Declaration). These statements further constituted a material breach of Paragraph 20 of the 2005 Settlement Agreement. Exh. 1 to Drake Declaration at 13; Drake Declaration at ¶ 16.

Shortly thereafter the Forest Service issued its Draft Record of Decision ("Draft ROD") in which it announced its tentative approval of the Federal Land Exchange that reflected several modifications from the original Proposed Action as were necessary in order to achieve the applicable equalization standards and also arrive at a final exchange that was both feasible and mutually acceptable to Meadows and the Forest Service. Drake Declaration at ¶ 17.

All but one Plaintiff objected to the Forest Service's tentative decision to approve the Federal Land Exchange as reflected in the Draft ROD. Drake Declaration at ¶ 18. The agency therefore held an objection resolution meeting in May 2021 to discuss Thrive's objections that did not resolve such concerns, leading the Forest Service's Objection Reviewing Officer to issue a written review that found none of the objections were well-taken. *Id.*

The Forest Supervisor for the Mt. Hood National Forest issued the Final Record of Decision ("ROD") approving the Federal Exchange on May 3, 2022. Drake Declaration at ¶ 19.

Pursuant to the approval and authorization in the Final ROD, the Forest Service and Meadows in turn executed a binding Exchange Agreement, committing themselves to exchange to each other the lands comprising the Federal Exchange as approved and described in that agreement.  Exh. 12 to Drake Declaration.

## **PROCEDURAL HISTORY**

On December 24, 2022, Plaintiffs filed their Complaint challenging the Forest Service's approval of the Federal Land Exchange and the underlying FEIS analyzing the exchange's likely environmental effects (Dkt. #1), and followed up by filing an Amended Complaint on March 20 of this year (Dkt. #4).  In their Complaint as amended, Plaintiffs set forth two overarching claims asserting that Federal Defendants violated NEPA, the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), and the Original Exchange Act and Exchange Clarification Act.  Amended Complaint at ¶¶ 36-60.  Plaintiffs' NEPA Claim comprises four separate counts asserting the EIS is unlawful in the following particulars:  (1) its Purpose and Need statement is allegedly arbitrary and capricious; (2) the Federal Land Exchange as approved by the Forest Service does not meet the Purpose of and Need for the exchange; (3) it allegedly fails to consider a reasonable array of alternatives; and (4) it allegedly failed to attach all legally required appendices. Id. at ¶¶ 36-51.  Plaintiffs' Original Exchange Act/Exchange Clarification Act claim also is broken down into four counts that assert the Federal Land Exchange violates the statutes in the following particulars:  (1) the Clarification Act allegedly does not authorize conveying a lesser area of both federal and non-federal lands from those identified for exchange in the Original Exchange Act; (2) the Forest Service allegedly failed to comply with direction in the Clarification Act to make the appraisals underlying the exchange available for public review; (3) the appraisals as approved by the Forest Service do not comply with legal requirements; and (4) the appraisals are

allegedly stale and need to be updated.  Federal Defendants filed their Answer to the Amended

Complaint on May 1, 2023.  Dkt. # 5.

On June 15, the Court held a telephonic Rule 16 scheduling conference at which the

parties discussed their respective proposals for the most appropriate framework to govern

litigation of this action (Dkt. # 9).  The Court followed up by issuing a scheduling order laying

out the litigation framework for the resolution of the merits of Plaintiffs' claims.  Dkt. #10.  Most

relevant for the purposes of the present motion, the next deadline in that schedule calls for

Federal Defendants to lodge their administrative record with the Court by Sept. 8, 2023.  Id.  The

soonest date in that schedule requiring the filing of any substantive brief or motion is Jan. 8,

2024, which is the deadline at present both for Plaintiffs to file any motion to complete or

supplement the administrative record and also for Plaintiffs to move for summary judgment.  Id.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 24 authorizes two types of intervention, as of right

(pursuant to paragraph (a)) or by permission of the court (pursuant to paragraph (b)).

To be entitled to intervene of right pursuant to subparagraph (a)(2) of Rule 24, an

applicant needs to show that:  (i) it timely filed its motion; (ii) it has one or more significantly

protectable interests related to the underlying subject of the action in which it seeks to intervene:

(iii) disposition of the action may impair such interests; and (iv) existing parties will not

adequately represent those interests.  Oakland Bulk & Oversized Terminal, LLC v. City of

Oakland, 960 F.3d 603, 620 (9th Cir. 2020).  In a case in which the defendant is a governmental

agency such as this one, an applicant must make a "very compelling showing" on the fourth of

these criteria that the agency will not adequately represent the applicant's interests.  *Id.*

A federal court may also permissively grant intervention in an action even to a person who cannot satisfy the criteria for intervention of right who timely moves for such relief and "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  District courts have extremely broad discretion to grant permissive intervention pursuant to subparagraph (b), although the following three criteria generally should guide the exercise of such discretion:  (i) the applicant has established an independent ground for jurisdiction; (ii) the motion is timely; and (iii) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. United States v. City of Los Angeles, 288 F.3d 391, 403 (9th Cir. 2002).

It is typical for courts to grant intervention to a private party to a federal land exchange in a case challenging the validity of the exchange.  *See, e.g.*, Desert Citizens Against Pollution v. Bisson, 231 F.3d 1172, 1174 (9th Cir. 2000).  Moreover, because Plaintiffs bring a NEPA claim, it should be noted that the Ninth Circuit has expressly revoked the "none but the federal defendant" principle to which it used to subscribe when evaluating intervention in the context of NEPA claims in Wilderness Soc'y v. Forest Serv., 630 F.3d 1173 (9th Cir. 2011) (*en banc*).

## ARGUMENT

I.    MHMO SATISFIES ALL OF THE ELEMENTS IN FRCP 24(a)(2) TO BE ENTITLED TO INTERVENE AS OF RIGHT IN THIS ACTION.

### A. MHMO's Motion Is Timely

Plaintiffs filed their Amended Complaint ("Complaint") laying out the complete suite of claims they intend to pursue in this action (Dkt. #4) just some four months ago, on March 20, 2023.  Federal Defendants answered the Complaint only around two and a half months ago, on May 1, 2023 (Dkt. #5).  Nor have the parties yet filed their Joint Alternative Dispute Resolution Report pursuant to LR 16−4(d).

As noted above, in the recently issued scheduling order prescribing the litigation framework for this case, the next filing date is not until after Labor Day, September 8, 2023, the deadline the Court set for Federal Defendants to lodge their administrative record. Dkt. #10. In addition, no substantive brief or motion is due pursuant to that scheduling order until Jan. 8, 2024, which is the deadline at present both for Plaintiffs to file any motion to complete or supplement the administrative record and also for Plaintiffs to move for summary judgment. *Id.*

Because the administrative record has yet to be lodged and any issues related to the scope or adequacy of that record have yet to be resolved and no substantive papers are due for around six more months, it cannot reasonably be contended that MHMO's intervention will prejudice any party or cause any delay in the proceedings. As a result, MHMO's motion is timely.

### B.  MHMO Has "Significant Protectable Interests" at Stake in the Resolution of this Action.

To satisfy the second prong of Rule 24(a)(2), an applicant for intervention must demonstrate a significantly protectable interest by showing: (1) that the interest it asserts is legally protectable; and (2) that there is a relationship between its legally protected interest and the claims at issue in the lawsuit. United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004); Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th Cir. 1993). The Ninth Circuit has held that "whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993).

Here, as a party to and proponent of the Federal Land Exchange that Plaintiffs challenge in this case, MHMO undoubtedly has significant legally protectable interests at issue in its resolution. Many of those interests are outlined in Mr. Drake's supporting declaration, and arise in part from the prodigious amount of time and money that MHMO has invested in both jointly

drafting the legislation that conditionally prescribed and set the parameters for the Federal Land

Exchange at issue as well as in implementing the exchange in accordance with such legislation.

Meadows obviously has a vital interest in seeking to protect the fruits of its nearly two decades

of investment to see the Federal Land Exchange to final approval and bring it to the cusp of full

implementation. Were Plaintiffs able to carry their burden to achieve the remedial relief they

seek, which includes a request for an injunction against the Forest Service from executing the

Federal Land Exchange, ¶ c., Prayer for Relief, Amended Complaint (Dkt. #4), Meadows stands

to lose the benefit of that investment and potentially gain nothing for the substantial magnitude

of the sunk costs it has ploughed into seeing the exchange to fruition.

MHMO also has a significantly protectable interest in the defense of the Federal Land

Exchange simply arising from the fact that it has property interests in the non-federal lands to be

conveyed and the anticipatory, prospective property interests in the federal lands it stands to

receive from the Forest Service pursuant to the exchange. In addition, such interests are also

reflected in the fact that it is due to receive a cash payment in the amount of $338,940 under the

approved exchange. Even though the Federal Land Exchange has not yet been fully

consummated, the fact that Meadows and the Forest Service have executed a binding Exchange

Agreement lends further weight to Meadows's interests at issue in this case. See Exh. 12 to

Drake Declaration at ¶ 9 ("The United States *shall* convey by patent to Mt. Hood Meadows the

real property described in Schedule B . . .") (emphasis supplied).

Finally, Meadows also has substantial interests at stake arising from its reasonable

investment-backed expectations in the development of appropriate housing units consistent with

Clackamas County zoning requirements on the federal lands the Forest Service has committed to

convey pursuant to the Federal Land Exchange. Under the Exchange Agreement, Meadows has

committed to convey its lands and other property in Hood River County from which it otherwise could reasonably be expected to generate revenue in exchange for the Forest Service lands.

As the foregoing establishes, MHMO has multiple tangible and significant legally protectable interests at stake in the resolution of the action to justify its intervention of right.

C.  *MHMO's "Significant Protectable Interests" Could be Impaired by an Adverse Ruling.*

In assessing the third element of Rule 24(a)(2), the Ninth Circuit has stated that it follows the guidance of the advisory committee notes for that rule, which provides that, "[i]f an absentee would be substantially affected in a practical sense by the determination made in the action, he should, as a general rule, be entitled to intervene."  Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Advisory Cmte. notes from 1966 Amendment).

Here, particularly under the lenient standard informed by practicality applicable in the Ninth Circuit, MHMO's interests from both a legal and business perspective have the potential to be meaningfully impaired if Plaintiffs were to prevail on one or more of their claims and secure whatever remedy this Court may determine to be appropriate, equitable, and within its authority under the circumstances prevailing at the time it may need to address any potential remedy.

D.  *Federal Defendants Cannot Adequately Represent MHMO's Interests in this Action.*

Finally, even though they can be expected to vigorously defend their approval of the Federal Land Exchange, Federal Defendants cannot be said to be in position to adequately represent MHMO's wholly distinct set of interests, for at least three principal reasons.

First, Federal Defendants cannot reasonably be expected to adequately represent MHMO's interests insofar as the bases for many of the concerns Plaintiffs present in their Complaint relate to actions MHMO has undertaken related to implementation of the Original Exchange Act and Exchange Clarification Act leading to the Federal Land Exchange.  Even

though Federal Defendants accurately and adequately describe each of these major steps in the FEIS, at the same time they are not in as strong a position as is Meadows for being able to represent its views on its involvement and positions it took in the administrative and legislative processes that led to approval of the Federal Land Exchange in the ROD. *See, e.g.,* Drake Declaration at ¶¶ 2-4. Adding further potency to this factor is MHMO's belief that it may be appropriate and useful in this case for the Court to consider limited extra-record clarifying explication of certain steps or factors with which MHMO is more familiar and on which it has more expertise for purposes of enhancing the Court's understanding some of the allegations underlying Plaintiffs' claims. MHMO wishes to clarify that it raises this prospect simply to acknowledge upfront its view that such processes may be useful to the Court, and therefore militate in support of its intervention in this case, and certainly not to suggest in any way that the Forest Service's administrative record is or will be inadequate. Moreover, mindful of the well-established rule ordinarily limiting judicial review to the administrative record, MHMO acknowledges that it would need to establish that any such extra-record materials it might ask the Court to consider fit within an exception for supplementing that record with materials helpful and necessary to the Court's review of Plaintiffs' claims, *see* <u>Lands Council v. Powell</u>, 395 F.3d 1019, 1030 (9th Cir.2004), particularly insofar as they relate to the potential viability of certain alternatives that Plaintiffs assert would have satisfied the necessary equalization parameters and needed to have been considered in more specific or explicit detail (Amended Complaint at ¶ 46).

Second, neither can Federal Defendants adequately represent the significant legal, economic, and property interests that MHMO has at stake in ensuring that it can proceed with the Federal Land Exchange and finally achieve some modicum of certainty as to its land and property ownership, and attendant business opportunities resulting therefrom. Rather, the Forest

Service's interests are defined principally by the requirement in NEPA for it to ensure adequate consideration and disclosure of the environmental effects of the Federal Land Exchange, and comply fully with the direction in the Original Exchange Act and Exchange Clarification Act, both of which it has done, of course, and it has no legal interest in or ongoing regulatory or other authority over the federal lands it is conveying to Meadows upon transfer of title to such lands.

Third, Meadows is on the opposite side from the Forest Service of the very Federal Land Exchange at issue in this case and thus, the agency cannot reasonably be expected to defend the disparate interests that Meadows has in defending the exchange, at least with the same vigor, to the same degree, or from MHMO's unique perspective as the holder of such interests.

II.    <u>IN THE ALTERNATIVE, THE COURT SHOULD GRANT MHMO PERMISSIVE INTERVENTION PURSUANT TO FRCP 24(b).</u>

In the alternative, MHMO requests permissive intervention under Rule 24(b). This portion of the rule requires that "on timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."

MHMO has already established that its intervention motion is timely. See Discussion at 14-15, supra. With respect to the other two factors courts routinely consider, they are driven largely by pragmatic considerations and to be determined on a case-by-case basis. <u>City of Los Angeles</u>, 288 F.3d at 403. Here, those considerations clearly counsel in favor of permissive intervention, as exemplified by the analysis of the court in <u>City of Williams v. Dombeck</u>, 2000 WL 33675559 (D.D.C. Aug. 17. 2000). In that case, the District Court granted permissive intervention to the private proponent of a federal land exchange, stating that "clearly, as the source and one of the beneficiaries of [the land exchange, the proponent] shares questions of law or fact with the main action." *Id.* at *4. Therefore, even though the proponent did not meet the standard for intervention as of right under NEPA, it was permitted to permissibly intervene. *Id.*

Page 19 – APPLICANT MT. HOOD MEADOWS OREG., LLC'S MOTION TO INTERVENE

Here, based on the factors discussed above and viewed from any conceivable angle, a veritable plethora of pragmatic considerations militate in favor of permitting MHMO to become a full party to this litigation.  Indeed, to do otherwise and not allow the non-federal party to a federal land exchange like MHMO to participate in the defense of the exchange in court would create a disincentive to such parties to engage in the massive amounts of time and resources that are typically required to comply with the present administrative processes necessary to bring such an exchange to completion, even for a congressionally prescribed exchange such as the one at issue here.  See Federal Land Exchange Facilitation Act of 1988, Pub. L. No. 100-49, 102 Stat. 1086 (Aug. 20, 1988) (Congress declaring that federal land exchanges "are a very important tool for Federal and State land managers and private landowners to consolidate Federal, State, and private holdings of land or interests in land for purposes of more efficient management and to secure important objectives including the protection of fish and wildlife habitat and aesthetic values; the enhancement of recreation opportunities; the consolidation of mineral and timber holdings for more logical and efficient development; the expansion of communities; the promotion of multiple-use values; and fulfillment of public needs").  As such, all of the relevant factors point to its being permitted to intervene under Federal Rule of Civil Procedure 24(b) even if for some reason the Court were to determine that it is not entitled to intervene as of right pursuant to Rule 24(a)(2).

## CONCLUSION

For the foregoing reasons, and as supported by the factual statements in the Declaration of Matthew B. Drake that MHMO contemporaneously files in support of this motion, MHMO respectfully submits that the Court should grant MHMO's motion to intervene as of right or, in the alternative, permissively.

Respectfully submitted this 24th day of July 2023.


          <u>s/ Stephen J. Odell</u>
          Stephen J. Odell
          MARTEN LAW, LLP

          Attorney for Applicant-in-Intervention Mt. Hood Meadows OREG., LLC