**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2936
sean.martin@usdoj.gov
Telephone:  (503) 727-1010
      Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **THRIVE HOOD RIVER; OREGON WILD; SIERRA CLUB; OREGON NORDIC CLUB; FRIENDS OF MOUNT HOOD; OREGON KAYAK AND CANOE CLUB;** and **MIKE MCCARTHY**,<br><br>      Plaintiffs,<br><br>v.<br><br>**META LOFTSGAARDEN;** and **UNITED STATES FOREST SERVICE**,<br><br>      Defendants,<br><br>and<br><br>**MT. HOOD MEADOWS OREG., LLC,**<br><br>      Defendant-Intervenor. | Case No. 3:22-cv-01981-AR<br><br>**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT/IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................v

CROSS-MOTION .....................................................................................................1

MEMORANDUM ......................................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT.........................................1

FACTUAL BACKGROUND ....................................................................................3

    A.    Congress passes initial exchange legislation in 2009.........................3

    B.    Developments following the passage of the 2009 legislation ..............5

    C.    Congress clarifies the exchange legislation.........................................5

    D.    Further progress in the land exchange ................................................6

    E.    The Forest Service reaches its final land exchange decision and executes an exchange agreement with Mt. Hood Meadows ...............7

STATUTORY BACKGROUND .................................................................................9

    A.    The National Environmental Policy Act ("NEPA").............................9

    B.    The exchange legislation/Section 1206(a)(2) ................................... 10

    C.    The Federal Land Policy Management Act ("FLPMA") ................... 11

STANDARD FOR JUDICIAL REVIEW ........................................................... 12

ARGUMENT .......................................................................................................... 14

    I.    The Forest Service complied with NEPA .......................................... 14

        A.    The Forest Service's articulation of the purpose and need for the land exchange was neither arbitrary nor capricious............. 14

1.    The Forest Service reasonably used the wording "up to" to describe acreage associated with the land exchange .......... 14

2.    NEPA did not require recitation of every provision in the exchange legislation within the purpose and need discussion ................................................................................. 17

3.    Equalizing the monetary values of exchange properties is not an environmental undertaking requiring NEPA analysis ................................................................................. 18

B.    Plaintiffs' NEPA challenge to the selected alternative is invalid ................................................................................. 18

C.    The Forest Service considered a reasonable range of alternatives ................................................................................. 21

1.    Under NEPA, the Forest Service rationally did not separately analyze Plaintiffs' four alternatives ..................... 23

2.    Under NEPA, the Forest Service rationally did not analyze value-equalization alternatives ................................ 23

3.    The Forest Service was not required by NEPA to discuss appraisal values in the final EIS ............................................ 24

4.    Plaintiffs are wrong regarding when the Forest Service disclosed appraised values ...................................................... 26

5.    Plaintiffs are wrong regarding what NEPA requires in a Record of Decision ................................................................. 26

6.    Plaintiffs fail to establish any NEPA violation regarding a wetland conservation easement ........................................... 27

D.    Under NEPA, the appraisals were not illegally excluded from the EIS ................................................................................. 28

1.    NEPA did not require that the appraisals be physically attached to the final EIS ...................................................... 28

2. Section 1206(a)(2) supersedes the now-rescinded NEPA regulation ............................................................. 30

3. Plaintiffs had the appraisals for years before the final EIS was issued ................................................................ 31

II. The Forest Service complied with the exchange legislation ............ 32

A. The Forest Service authorized a permissible exchange acreage .................................................................................. 32

1. The final EIS accurately accounted for congressional developments that occurred after the draft EIS ..................... 32

2. The Forest Service's interpretation of the "lesser area" provision in Section 1206(a)(2)(H) is superior to Plaintiffs' ... 33

a. The Forest Service's interpretation is well supported ............ 33

b. The legislative history supports the Forest Service's interpretation ..................................................................... 37

c. Plaintiffs' interpretation is based on a misconception about the Forest Service's role in the land exchange ............ 37

3. Plaintiffs' interpretation of the "if necessary" provision in Section 1206(a)(2)(H) is ill-supported ..................................... 39

B. The Forest Service was neither arbitrary nor capricious in relying on the appraisals ............................................................. 41

1. Plaintiffs ignore their own appraiser's opinions and the principle of deference to agency expertise .............................. 42

2. Plaintiffs fail to establish that the Forest Service was arbitrary and capricious in relying on the appraisal of the Federal land ........................................................................... 45

3. Plaintiffs fail to establish that the Forest Service was arbitrary and capricious in relying on the appraisal of the non-Federal land ................................................................... 46

C.    The final appraised values are valid ............................................ 49

CONCLUSION........................................................................................... 51

CERTIFICATE OF COMPLIANCE............................................................ 52

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438
(9th Cir. 2024) ........................................................................ 43

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974) ................................................................ 13

*Cal. by and through Becerra v. Azar*, 950 F.3d 1067 (9th Cir. 2020) .............. 44

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, -- F.4th --,
2025 WL 2460946 (9th Cir. August 27, 2025) .......................................... 9, 19

*City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004) ............................ 12

*Colo. Wild Public Lands, Inc. v. Shoop*, 2021 WL 1138061
(D. Colo. March 25, 2021) ................................................................. 18, 29-30

*Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 61 F.4th 633
(9th Cir. 2023) ........................................................................ 13

*Earth Island Inst. v. Carlton*, 626 F.3d 462 (9th Cir. 2010) ....................... 43-44

*Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986) .......................... 13

*Greenpeace Action v. Franklin*, 14 F.3d 1324 (9th Cir.1992) ........................ 44

*Greer Coal., Inc. v. U.S. Forest Serv.*, 2011 WL 671750 (D. Ariz. 2011) ......... 44

*Greer Coal., Inc. v. U.S. Forest Serv.*, 470 Fed. App'x 630 (9th Cir. 2012) ..... 44

*Headwaters, Inc. v. Bureau of Land Mgmt.*, 914 F.2d 1174
(9th Cir. 1990) ........................................................................ 22

*Idaho Sporting Congress, Inc. v. United States Forest Serv.*,
92 F.3d 922 (9th Cir. 1996) .............................................................. 44

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ................................ 35

*Lopez v. Garland*, 116 F.4th 1032 (9th Cir. 2024) ........................................... 35

*Marsh v. Oregon Nat. Res. Council*, 490 U.S. 375 (1989) .......................... 43, 46

*Noell v. Am. Design, Inc., Profit Sharing Plan*, 764 F.2d 827
   (11th Cir. 1985) .................................................................................... 35

*Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136
   (9th Cir. 2007) ...................................................................................... 12

*Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766 (9th Cir. 1985) ..................... 13-14

*San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971
   (9th Cir. 2014) ................................................................................... 12-13

*San Luis Valley Ecosystem Council v. U.S. Forest Serv.*,
   No. 04-CV-01071, 2009 WL 792257 (D. Colo. Mar. 23, 2009) ............... 18, 30

*Selkirk Conservation All. v. Forsgren*, 336 F.3d 944 (9th Cir. 2003) .............. 44

*Seven Cnty. Infrastructure Coal., Inc. v. Eagle Cnty., Colo.*,
   145 S. Ct. 1497 (2025) ................................... 9, 9-10, 14, 17, 19, 22, 24, 28, 29

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ............................................... 35

*Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033
   (8th Cir. 2007) ...................................................................................... 35

*Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113 (9th Cir. 2012) ..... 13

*Union Ins. Co. v. United States*, 73 U.S. (6 Wall.) 759 (1867) ........................ 34

*United States v. Hodge*, 321 F.3d 429 (3d Cir. 2003) ..................................... 34

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978) ........... 39

*Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853
   (9th Cir. 2004) ...................................................................................... 14

*Wilderness Soc'y v. Tyrrel*, 918 F.2d 813 (9th Cir. 1990) ............................... 39

*Willis v. United States*, 719 F.2d 608 (2d Cir. 1983) ................................... 34-35

## STATE CASES

*Hood River Valley Residents' Comm., Inc. v. Bd. of Cnty. Comm'rs of Hood
   River Cnty.*, 91 P.3d 748, 193 Or. App. 485 (2004) ......................................... 4

## FEDERAL STATUTES

5 U.S.C. § 706(2)(A) ..................................................................................... 12

16 U.S.C. § 539n(1)(a) ........................................................................ 8, 15, 16

42 U.S.C. § 4332(2)(c)(iii) ............................................................................ 19

43 U.S.C. § 1716 ..................................................................................... 11, 14

43 U.S.C. § 1716(a) ................................................................................. 11-12

43 U.S.C. § 1716(b) ................................................................. 12, 29, 37, 40

## FEDERAL REGULATIONS

40 C.F.R. § 1502.19 ...................................................................................... 30

## CONGRESSIONAL ENACTMENTS AND LEGISLATIVE HISTORY

Mount Hood Cooper Spur Land Exchange Clarification Act,
   Pub. L. 115-110, 131 Stat. 227 (2018) ........................................................... 5

Omnibus Public Land Management Act of 2009,
Pub. L. 111-11, 123 Stat. 991 (2009) .......................................................... 3, 8

S. Rep. 115-52 (2017), 2017 WL 1902115 .................................................... 37

S. Rep. 115-59 (2017), 2017 WL 1902121 .................................................... 37

Section 1206(a) to Omnibus Public Land Management Act of 2009 (as
   amended 2018) ....................................................................................*passim*

**CROSS-MOTION**

Defendants file this cross-motion for summary judgment against Plaintiffs' claims. This cross-motion is supported by the following memorandum and the U.S. Forest Service's administrative record (*see* ECF 66-67). The following memorandum also responds to Plaintiffs' motion for summary judgment (ECF 74). Pursuant to LR 7-1(a), the parties conferred but were not able to resolve the need for this cross-motion.

**MEMORANDUM**

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs challenge the U.S. Forest Service's May 2022 Record of Decision to implement Congressional direction regarding a land exchange in the Mt. Hood area. *See* AR 50369-408 (final Record of Decision).[1] Under the decision, Mt. Hood Meadows agreed to convey nearly 80% of its private lands at Cooper Spur to the government, and in return the United States is conveying 67 acres of federal lands in Government Camp to Mt. Hood Meadows.

Plaintiffs' litigation does not serve the public interest regarding Mt. Hood. The Forest Service-authorized land exchange would increase the public

---

[1] References to the administrative record ("AR") are to the replaced AR lodged with this Court via thumb drive in June 2025. *See* ECF 66-67.

Page 1    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

lands footprint on the mountain by more than 530 acres, newly add federal wilderness protections for other federal lands, and institute a new watershed-protection land designation for existing federal lands and those land conveyed from Mt. Hood Meadows.    But Plaintiffs would throw all this good away because they believe the land exchange should have forced Mt. Hood Meadows to convey every acre of its property at Cooper Spur.

Plaintiffs' litigation is also legally and factual deficient.   Plaintiffs raise two claims against the Forest Service's authorization of the land exchange but summary judgment is appropriate against both claims.   First, as Defendants explain below, summary judgment is warranted against Plaintiffs' National Environmental Policy Act ("NEPA") claim.   Plaintiffs heavily focus on concerns regarding the dollar valuation of land parcels, but NEPA focuses on the environmental impacts of federal action and the Forest Service followed the appropriate NEPA procedures and was neither arbitrary nor capricious

Second, summary judgment is appropriate against Plaintiffs' claim alleging a violation of the legislation regarding the land exchange. The Forest Service authorized a permissible land exchange acreage, and its appraisal expert rationally approved the appraisals of the parcels at issue.

//

//

Page 2        Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

## FACTUAL BACKGROUND

### A.    Congress passes initial exchange legislation in 2009.

In 2009, Congress passed legislation to guide a potential land exchange between Mt. Hood Meadows and the United States in the Mt. Hood area. Omnibus Public Land Management Act of 2009, Section 1206(a), Pub. L. 111-11, 123 Stat. 991 (2009).  Under Section 1206(a)(1), the exchange would involve approximately 120 acres[2] of National Forest System land in Government Camp (the "Federal land") and about 770 acres of Cooper Spur private land and buildings, furniture and other property at the Cooper Spur Inn and the Cooper Spur Ski Area (the "non-Federal land").

The legislation does not authorize a Federal taking of Mt. Hood Meadows' land or force Mt. Hood Meadows to convey its land.  Instead, the legislation conditions the entire land exchange on a voluntary offer to convey from Mt. Hood Meadows.  Section 1206(a)(2)(A).  Under Section 1206(a)(2)(A), "if Mt. Hood Meadows offers to convey to the United States all right, title, and

---

[2] Federal legislation enacted in 2018—the Clarification Act—changed the 120 acres to 107 acres.  Section 1206(a)(1)(C).

In this memorandum, Defendants use the term "exchange legislation" and/or "Section 1206" to reference the Omnibus Act as amended by the Clarification Act.

Page 3    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

interest of Mt. Hood Meadows in and to the non-Federal land, the Secretary

shall convey to Mt. Hood Meadows all right, title, and interest of the United

States in and to the Federal land."[3]

The federal legislation does not reference (or incorporate) other

proceedings that involved Mt. Hood Meadows and Thrive—but not the Forest

Service—relating to a land exchange.  More than 20 years ago, Thrive sued Mt.

Hood Meadows and the Board of County Commissioners of Hood River County

in state court to challenge a 2001 property exchange agreement between Mt.

Hood Meadows and the county.  *See Hood River Valley Residents' Comm., Inc.*

*v. Bd. of Cnty. Comm'rs of Hood River Cnty.*, 91 P.3d 748, 193 Or. App. 485

(2004).[4]  In 2005, parties including Mt. Hood Meadows and Thrive entered a

settlement agreement regarding a potential land exchange.  AR 16034-47.

Neither the U.S. Forest Service nor any other federal government party was

part of the settlement agreement or the state-court litigation that preceded the

settlement agreement.

State-court litigation regarding the 2001 exchange is still active.  *See*

---

[3] The Federal land would be conveyed "subject to valid existing rights."
Section 1206(a)(2)(A).

[4] Thrive states in its operative complaint that it is "also known as the Hood
River Valley Residents' Committee, Inc."  ECF 4, ¶ 7.

Page 4        Defendants' Cross-Motion for Summary Judgment; *Thrive Hood
              River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

ECF 4, Am. Compl. ¶ 16 (noting Plaintiffs' ongoing state-court litigation). The state-court litigation involves Thrive, Mt. Hood Meadows, and Hood River County. No federal government party is involved in the state-court litigation.

## B.    Developments following the passage of the 2009 legislation.

In July 2015, in this Court, litigants including both Thrive[5] and Mt. Hood Meadows sued the Forest Service alleging an unreasonable delay in completing the land exchange. *See* 3:15-cv-01397-BR (D. Or.).

In October 2016, the Forest Service under NEPA issued a draft Environmental Impact Statement ("draft EIS") regarding the exchange. AR 39394-784.

In 2017, an appraiser selected by the Forest Service and Mt. Hood Meadows produced initial appraisals of the dollar values of the Federal and non-Federal lands associated with the exchange. *See* AR 41565-2448, 47106.

## C.    Congress clarifies the exchange legislation.

In January 2018, Congress passed the Mount Hood Cooper Spur Land Exchange Clarification Act, Pub. L. 115-110, 131 Stat. 227 (2018) (the "Clarification Act"). The Clarification Act amended Section 1206(a) of Pub. L. 111-11 in several key ways. For example, the Clarification Act created a new

---

[5] Thrive sued under its name Hood River Valley Residents' Committee ("HRVRC").

subparagraph (H) within Section 1206(a)(2).  Under Section 1206(a)(2)(H):

> "Notwithstanding" subparagraph (A) of Section 1206(a)(2), "a lesser area of Federal land or non-Federal land may be conveyed if necessary to equalize appraised values of the exchange properties, without limitation, consistent with the requirements of this Act and subject to the approval of the [Forest Service] and Mt. Hood Meadows.

With the enactment of the Clarification Act, there was a need for supplemental appraisals.  AR 47106.  In October 2019, the appraiser selected by the Forest Service and Mt. Hood Meadows produced supplemental appraisals.  AR 44249-559 (Federal land); AR 43755-4248 (non-Federal land).  In November 2019, the Forest Service's review appraiser approved the supplemental appraisals.  *See* AR 44560-89 (Federal), AR 44590-636 (non-Federal).

### D.    Further progress in the land exchange.

Considering the 2019 supplemental appraisals, the Forest Service and Mt. Hood Meadows met in February 2020 to discuss exchange scenarios.  *See* AR 44671-93.

This Court dismissed the Thrive "unreasonable delay" case against the Forest Service in February 2021.  ECF 143, 15-cv-01397-BR.

In February 2021, the Forest Service published a final Environmental Impact Statement ("final EIS") under NEPA regarding the environmental effects of the land exchange.  AR 47071-543.  Also in February 2021, the Forest

Page 6        Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Service published a draft Record of Decision for the exchange. AR 46989-7027. Under the draft Record of Decision, Mt. Hood Meadows agreed to convey nearly 80% of its non-Federal land in return for about 67 acres of Federal land. *See* AR 46993, 46995, 46996. The draft Record of Decision explained the process for interested parties to file administrative objections. AR 47004-06.

In March 2021, Plaintiffs submitted administrative objections to the Forest Service regarding the final EIS and the draft Record of Decision. *See* AR 47757-84. In May 2021, the Forest Service hosted a meeting to discuss Plaintiffs' objections. AR 49622-26. In June 2021, the Forest Service responded in detail to Plaintiffs' administrative objections. AR 49918-38.

**E.    The Forest Service reaches its final land exchange decision and executes an exchange agreement with Mt. Hood Meadows.**

On May 3, 2022, the Forest Service published its final Record of Decision approving the agreed land exchange between the government and Mt. Hood Meadows. AR 50369-4008. The Forest Service found the selected land exchange to be in the public interest and in accord with Congressional direction. AR 50376-77. On May 4, 2022, the Forest Service and Mt. Hood Meadows formally executed an Exchange Agreement. AR 50410-25.

Under the exchange, Mt. Hood Meadows is conveying about 604 acres of its non-Federal land at Cooper Spur, valued at $3.3 mil. total. *See* AR 50373.

Page 7    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

It is also conveying personal property and improvements at the Cooper Spur ski area valued at about $798,000. *See* AR 50410. In return, the United States is conveying about 67 acres of National Forest System lands in Government Camp valued at about $3.76 mil., AR 50373, and the United States will make a cash equalization payment of about $338,900. *See* AR 50410. Under the final Record of Decision, Mt. Hood Meadows is not conveying Tracts 4 through 7 of its non-Federal land at Cooper Spur, totaling about 159 acres. AR 50375. The United States is not conveying the 40-acre east Federal land parcel at Government Camp. *Id.*

The exchange will result in a net increase in 538 acres of public land on the Mt. Hood National Forest, and completion of the exchange will trigger the Congressionally-directed designation of public lands as Mount Hood Wilderness lands and Crystal Springs Watershed Special Resources Management Unit lands. AR 50372, 50377. *See also* Omnibus Public Land Management Act of 2009, Pub. L. No. 111-11, Section 1202(c)(2) (regarding Mount Hood Wilderness lands); 16 U.S.C. § 539n (regarding Crystal Springs unit lands).

This litigation followed.

///

///

Page 8        Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

## STATUTORY BACKGROUND

### A.    The National Environmental Policy Act ("NEPA")

NEPA "requires the preparation of reports that inform the agency and the public of the environmental consequences of proposed projects." *Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, -- F.4th --, 2025 WL 2460946, *3 (9th Cir. August 27, 2025).

NEPA has a limited scope. "At bottom," all that NEPA "requires is that the agency consider and disclose environmental impacts." *Id.* "NEPA does not require the agency to weigh environmental consequences in any particular way." *Seven Cnty. Infrastructure Coal., Inc. v. Eagle Cnty., Colo.*, 145 S. Ct. 1497, 1507 (2025). Unlike other environmental laws such as the Endangered Species Act or the Clean Water Act, NEPA is a "purely procedural" statute that imposes no substantive environmental obligations or restrictions. *Id.*

As the Ninth Circuit recognizes, "[t]he limited scope of NEPA also circumscribes the scope of judicial review." *Cascadia Wildlands*, 2025 WL 2460946 at *3. "The bedrock principle of judicial review in NEPA cases can be stated in a word: Deference." *Seven Cnty.*, 145 S. Ct. at 1515.

Courts defer to an agency regarding "what facts are relevant" to an agency's NEPA decision and to the other critical pieces of NEPA procedure. *See id.* at 1509, 1512. The question of whether a particular NEPA report "is

Page 9    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

detailed enough in a particular case itself requires the exercise of agency discretion." *Id*. at 1512. Judicial review of an agency's judgments regarding potential NEPA alternatives and/or whether NEPA alternatives are feasible "must be at its most deferential." *Id*. (cleaned up).

It is an agency's province—not a project opponent's—to make fact-dependent, context-specific, and policy-laden choices about the depth and breadth of its NEPA inquiry. *Id*. at 1513. Courts should "afford substantial deference and should not micromanage those agency choices so long as they fall within a broad zone of reasonableness." *Id*.

## B.    The exchange legislation/Section 1206(a)(2)

In addition to Section 1206(a)(2)(H), discussed *supra at* Factual Background C., the exchange legislation required that the Forest Service and Mt. Hood Meadows "jointly select an appraiser to conduct an appraisal of the Federal land and non-Federal land." Section 1206(a)(2)(D)(i). This appraisal was to be conducted "in accordance with nationally recognized appraisal standards," including the Uniform Appraisal Standards for Federal Land Acquisitions ("UASFLA") and the Uniform Standards of Professional Appraisal Practice ("USPAP").[6] Section 1206(a)(2)(D)(ii).

---

[6] The UASFLA are in the administrative record at AR 28073-333. The USPAP are in the administrative record at AR 42523-877.

Page 10    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Further, under Section 1206(a)(2)(D)(iii), "after the final appraised value of the Federal land and the non-Federal land are determined and approved" by the Forest Service, the agency "shall not be required to reappraise or update the final appraised value for a period of up to 3 years, beginning on the date of the approval" of the Forest Service "of the final appraised value."[7]

Section 1206(a)(2)(D)(iv) also provided that "[b]efore completing the land exchange," the Forest Service "shall make available for public review the complete appraisals of the land to be exchanged."

## C.    The Federal Land Policy Management Act ("FLPMA")

Congress provided that the government carry out the land exchange at issue "in accordance with" 43 U.S.C. § 1716, a provision in the Federal Land Policy and Management Act ("FLPMA"), except "as otherwise provided" in the exchange legislation. Section 1206(a)(2)(B).

Under FLPMA section 1716, the government may exchange National Forest lands "where the [government] determines that the public interest will be well served by making that exchange." 43 U.S.C. § 1716(a). In an exchange of Forest Service lands for non-Federal lands, further, the dollar values of the

---

[7] This three-year appraisal "shelf life" is subject to an exception if land condition is significantly and substantially altered by fire, windstorm, or other events. Section 1206(a)(2)(D)(iii)(II). This exception is not relevant here.

Page 11      Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

lands either shall be equal or their values "shall be equalized" by the payment of money to or from the government. *Id.* § 1716(b). Any equalization payment may not exceed 25% "of the total value of the land or interests transferred out of Federal ownership." *Id.*

In the final EIS for the land exchange, the Forest Service explained its interpretation of the scope of Section 1206(a)(2)(B)'s incorporation of FLPMA section 1716. AR 47104-06.

## STANDARD FOR JUDICIAL REVIEW

None of the statutes at issue contain a provision for judicial review, so this Court reviews Plaintiffs' claims under the Administrative Procedure Act ("APA"). *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205 (9th Cir. 2004); 5 U.S.C. § 706(2)(A).

This APA standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007). "The APA give an agency substantial discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (cleaned up).

A plaintiff challenging an agency decision under the APA bears the burden of proof and persuasion. *Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 61 F.4th 633, 639–40 (9th Cir. 2023). Under the APA, "[a]n agency will have acted arbitrarily and capriciously only when the record plainly demonstrates that [the agency] made a clear error in judgment." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1124 (9th Cir. 2012) (cleaned up); *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986) ("The court may not set aside agency action as arbitrary or capricious unless there is no rational basis for the action."). Courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (citation omitted).

This Court's role in reviewing administrative proceedings is to determine "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Accordingly, summary judgment "is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* at 770.

//

//

Page 13    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

## ARGUMENT

## I.     The Forest Service complied with NEPA.

### A.     The Forest Service's articulation of the purpose and need for the land exchange was neither arbitrary nor capricious.

Summary judgment for Defendants is appropriate against Count 1 of Plaintiffs' NEPA claim.  *See* ECF 4 ¶¶ 38-43 (alleging NEPA count 1).

In the Final EIS, the Forest Service articulated a reasonable NEPA purpose and need for the land exchange.  AR 47096-97.  Courts afford agencies significant NEPA discretion to articulate a statement of purpose and need. *Westlands Water Dist. v. U.S. Dep't of the Interior*, 376 F.3d 853, 866 (9th Cir. 2004).  "The bedrock principle of judicial review in NEPA cases can be stated in a word: Deference."  *Seven Cnty.*, 145 S. Ct. at 1515.  In assessing a purpose and need that an agency specifies in an EIS, courts consider the statutory context of the proposed federal action.  *See Westlands*, 376 F.3d at 866.  Here, the land exchange's purpose and need is guided by Section 1206(a) and by 43 U.S.C. § 1716.

### 1.     The Forest Service reasonably used the wording "up to" to describe acreage associated with the land exchange.

Plaintiffs' arguments are unpersuasive that the Forest Service's purpose and need statement was unreasonable.  First, the Final EIS rationally stated that the size of the future Crystal Springs Watershed Special Resources

Page 14     Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Management Unit would be "up to" 2,854 acres. AR 47096. This Federal-land unit would be created on the completion of the land exchange. 16 U.S.C. § 539n(1)(a). It would include a maximum of 2,854 acres: 2,090 acres of existing National Forest lands along with all the non-Federal land if conveyed by Mt. Hood Meadows in the land exchange. AR 47100, 47129, 47137.

Plaintiffs argue that the "up to" wording wrongly gave the Forest Service "discretion to shrink" the Crystal Springs unit below 2,854 acres. Pls.' Mem. 13-14. Not so. It was reasonable for the Forest Service to use the term "up to 2,854 acres" to describe the size of the future unit. That is because per the Clarification Act, Section 1206(a)(2)(H) is clear that fewer than all the non-Federal land may be conveyed. *See* AR 49928-30 (Forest Service's responses to Plaintiffs' administrative objections). The "lesser area"/"without limitation" language in Section 1206(a)(2)(H) modifies the potential scope of the land exchange acreage under Section 1206(a)(2). Any non-Federal lands retained by Mt. Hood Meadows, under Section 1206(a)(2)(H), would not become part of the Crystal Springs unit.[8]

---

[8] Because Mt. Hood Meadows did not offer to convey all its non-Federal land at Cooper Spur, the ultimate size of the Crystal Springs unit will be approximately 2,701 acres between the existing National Forest lands and the approximately 604 acres of Cooper Spur lands conveyed from Mt. Hood Meadows. *See* AR 50376.

Page 15    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Plaintiffs argue, however, that the "up to 2,854 acres" wording is arbitrary and capricious, because 16 U.S.C. § 539n(1)(a) supposedly requires that "all" land depicted in a June 2006 map be included in the future Crystal Springs unit. Pls.' Mem. 13. This is incorrect. The Crystal Springs legislative provision does not say "all" but instead refers to "certain Federal land . . . as generally depicted" in the June 2006 map. 16 U.S.C. § 539n(1)(a). The June 2006 map, AR 16584, is a guide to the location and parameters of the Crystal Springs unit, but does not control over Section 1206(a)(2). The later-enacted Section 1206(a)(2)(H) makes clear that not all potential exchange lands must be conveyed. Cooper Spur non-Federal land not conveyed to the government remains privately owned and not part of the Crystal Springs unit. *See* AR 43757.

In a footnote, Plaintiffs complain that the final EIS departed for "unknown reasons" from the Draft EIS, which did not use the "up to" language in describing the size of the Crystal Springs unit. Pls.' Mem. 13 n.7; AR 39414 (purpose and need discussion in the draft EIS). But the draft EIS was published in 2016, several years before the Clarification Act enacted the new "lesser area"/"without limitation" language in Section 1206(a)(2)(H). The final EIS, published in 2021, rationally explained to the public that the Clarification

Page 16    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Act provided "flexibility" that the Forest Service and Mt. Hood Meadows "need not undertake an 'all-for-all' exchange." AR 47076.

> **2. NEPA did not require recitation of every provision in the exchange legislation within the purpose and need discussion.**

Plaintiffs argue that the Forest Service violated NEPA because the "purpose and need" discussion in the final EIS did not discuss the appraisal-value equalization provision in Section 1206(a)(2)(H)(i). Pls.' Mem. 14.[9] But the agency correctly recognized that its purpose was to "comply with the congressional direction and conditions of" the exchange legislation. AR 47096; AR 49929-30 (Forest Service's response to Plaintiffs' administrative objections). NEPA did not require that the Forest Service go through an exercise of reciting each provision in the entire exchange legislation in the "purpose and need" section. "[W]hen determining whether an agency's EIS complied with NEPA, a court should afford substantial deference to the agency." *Seven Cnty.*, 145 S. Ct. at 1511-12.

///

///

---

[9] Plaintiffs mistakenly cite the equalization provision as Section 1206(a)(2)(E)(i). That provision addresses land surveys, not appraisal value equalization.

Page 17    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

**3.    Equalizing the monetary values of exchange properties is not an environmental undertaking requiring NEPA analysis.**

Plaintiffs also fail to show how equalizing the appraised dollar values of properties is an "environmental" undertaking under NEPA rather than an economic endeavor.  Property valuation is environmentally neutral and outside the scope of NEPA.  NEPA "cannot be reasonably understood as encompassing of parity in the value of the parcels to be exchanged."  *Colo. Wild Public Lands, Inc. v. Shoop*, 2021 WL 1138061, *8-*9 (D. Colo. March 25, 2021).  *See also San Luis Valley Ecosystem Council v. U.S. Forest Serv.*, No. 04-CV-01071, 2009 WL 792257, *6 (D. Colo. Mar. 23, 2009) (finding in a land exchange challenge that appraisal values are "completely irrelevant to the NEPA claim").

For these reasons, this Court should grant summary judgment to Defendants against Count 1 of Plaintiffs' NEPA claim.

**B.    Plaintiffs' NEPA challenge to the selected alternative is invalid.**

Summary judgment for Defendants is also appropriate against Count 2 of Plaintiffs' NEPA claim.  *See* ECF 4 ¶ 44 (alleging NEPA count 2).  Plaintiffs argue that the Forest Service violated NEPA because its "chosen alternative" for the land exchange "does not maximize the land exchanged" and therefore "does not meet congressional direction."  Pls.' Mem. 15.

Page 18    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Count 2 fails; Plaintiffs cite no authority recognizing a valid NEPA claim against the substance of an agency's selected alternative. NEPA does not require that the Forest Service adopt—or not adopt—a particular alternative. NEPA is a "purely procedural statute" that "simply requires an agency to prepare an EIS." *Seven Cnty.*, 145 S. Ct. at 1507.

Plaintiffs' Count 2 would establish a novel NEPA duty that goes well beyond existing law. Plaintiffs cite the NEPA statute at 42 U.S.C. § 4332(2)(c)(iii), but that specifies only that an EIS include a detailed statement on a "reasonable range of alternatives" and says nothing about which alternative an agency may adopt. Plaintiffs' Count 2 is also out of step with Supreme Court and Ninth Circuit law. "Under NEPA, an agency's only obligation is to prepare an adequate report." *Seven Cnty.*, 145 S. Ct at 1511. "NEPA imposes no *substantive* constraints on the agency's ultimate decision to . . . approve a proposed project." *Id.* And as the Ninth Circuit recently emphasized,"[a]t bottom" all that NEPA "requires is that the agency consider and disclose environmental impacts." *Cascadia Wildlands*, 2025 WL 2460946, *3. "NEPA requires no more." *Id.* (cleaned up).

Even aside from these problems, Count 2 fails because it relies on a mischaracterization of the exchange legislation. Nothing in the legislation requires a maximal exchange of acreage. Instead, as the Forest Service found

Page 19    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

during the NEPA process, the legislation provided "flexibility" to the Forest Service and Mt. Hood Meadows to agree on a lesser area of lands to be conveyed if necessary to equalize their appraised values. AR 47147. Further, as the Forest Service noted, the legislation "does not allow the Forest Service to obtain non-Federal land if it is not offered by Mt. Hood Meadows." AR 49930. The private lands not included in the final exchange are "property that Mt. Hood Meadows, following the 2019 appraisals, did not offer to convey and which the Forest Service is not authorized to 'take' under the exchange legislation." *Id.*

Count 2 also fails as a NEPA claim because it is premised not on environmental effects but on Plaintiffs' legal position regarding how much land must be conveyed by or to Mt. Hood Meadows. Plaintiffs' claim does not relate to any NEPA environmental effects such as water/soil quality or effects on wildlife species or habitat. The inclusion of less acreage in the land exchange than Plaintiffs prefer has no negative environmental effects. A lesser area of Federal land conveyed to Mt. Hood Meadows means less future private development at Government Camp and less negative cultural resource impacts, as more acreage will remain in Federal ownership. *See* AR 47147, 50376. A lesser area of non-Federal land conveyed by Mt. Hood Meadows "would be akin to implementing the no-action alternative for that particular

Page 20    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

acreage." AR 47147. The existing status quo would continue, without change, for any non-Federal land that Mt. Hood Meadows chooses not to convey. *See* AR 47148.

For these reasons, this Court should grant summary judgment to Defendants against Count 2 of Plaintiffs' NEPA claim.

### C.    The Forest Service considered a reasonable range of alternatives.

Summary judgment for Defendants is appropriate against Count 3 of Plaintiffs' NEPA claim. *See* ECF 4 ¶¶ 45-50 (alleging NEPA count 3). Plaintiffs argue that the Forest Service violated NEPA because it failed to analyze reasonable alternatives "for equalizing value while maximizing the amount of land exchanged." Pls.' Mem. 16. Not so; the agency considered a reasonable range of alternatives in the Final EIS.

The Forest Service in the final EIS considered the environmental effects of both an "all-for-all" alternative and a no-action alternative. *See* AR 47117-37. As the Forest Service explained, it analyzed the effects of the "all-for-all" exchange, "in order to capture the full range of potential effects." AR 47076. "From an environmental analysis standpoint, the broadest range of alternatives and resulting effects has been analyzed." AR 49931. If some of the Government Camp (Federal) lands are not "ultimately agreed upon and authorized for exchange," the final EIS noted, "the effects from expected future

Page 21    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

private development would be less than and within the effects studied herein." AR 47076. Similarly, if some of the Cooper Spur (non-Federal) lands are not agreed upon and authorized for exchange, "the retention of those lands would be akin to implementing the no-action alternative for that particular acreage." *Id.* The final EIS also discussed other alternatives it considered by eliminated from detailed study. AR 47138-41.

The Forest Service's alternatives analysis readily passes NEPA muster. As the Supreme Court recognized this year, when an agency makes judgments regarding NEPA alternatives, "a reviewing court must be at its most deferential." *Seven Cnty.*, 145 S. Ct. at 1512 (cleaned up). In assessing feasible alternatives under NEPA, "an agency will invariably make a series of fact-dependent, context-specific, and policy-laden choices about the depth and breadth of its inquiry—and also about the length, content, and level of detail of the resulting EIS." *Id.* at 1513. Courts should afford an agency "substantial deference." *Id.* Under NEPA, "an agency's consideration of alternatives is sufficient if it considers an appropriate range of alternatives, even if it does not consider every available alternative." *Headwaters, Inc. v. Bureau of Land Mgmt.*, 914 F.2d 1174, 1181 (9th Cir. 1990). An agency need not discuss alternatives that are like alternatives actually considered, or alternatives that are infeasible. *Id.* at 1180-81.

Page 22    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

**1.    Under NEPA, the Forest Service rationally did not separately analyze Plaintiffs' four alternatives.**

Plaintiffs briefly identify four alternatives they believe the Forest Service should have analyzed, Pls.' Mem. 17, but these alternatives are either similar environmentally to those actually considered or are infeasible. The first alternative was considered in the final EIS and the Forest Service explained why it was eliminated from further consideration. AR 47140-41. The second and fourth alternatives, with Mt. Hood Meadows retaining certain non-Federal land at Cooper Spur, would not have different environmental effects than if those lands were conveyed to the Forest Service. As the final EIS found, if some Cooper Spur lands are not agreed upon and authorized for exchange, "the retention of those lands would be akin to implementing the no-action alternative for that particular acreage." AR 47076. As for the third alternative, a monetary "donation" by Mt. Hood Meadows, that is a business/economic judgment by Mt. Hood Meadows and not within the discretion of the Forest Service.

**2.    Under NEPA, the Forest Service rationally did not analyze value-equalization alternatives.**

Plaintiffs argue that the Forest Service violated a NEPA duty because the final EIS supposedly failed to analyze in detail "the various ways in which the appraised values" of the land parcels could be equalized. Pls.' Mem. 17.

Page 23    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

This argument lacks merit under NEPA. Property appraisals are purely economic; Plaintiffs fail to connect dollar valuations of real-estate parcels to environmental effects requiring the study of additional NEPA alternatives. As the Forest Service found in the administrative objections process, "questions regarding the dollar valuations of real estate parcels . . . appear to be economic-focused concerns." AR 49932. The final EIS abided by NEPA because it "assessed the environmental effects of the land exchange" in "accounting for the environmental effects if every potential land parcel were exchanged." AR 49932. The highest deference is due the Forest Service in how it addressed NEPA alternatives. *Seven Cnty.*, 145 S. Ct. at 1512.

### 3. The Forest Service was not required by NEPA to discuss appraisal values in the final EIS.

Plaintiffs attempt to fault the Forest Service under NEPA for not discussing the results of the Federal and non-Federal appraisals in the final EIS. Pls.' Mem. 17. But appraisals are economic valuation documents, not assessments of environmental effects. Further, the Forest Service discussed the results of the appraisals in the draft Record of Decision that was published in February 2021 alongside the final EIS. *See* AR 46993, 46995. Plaintiffs, further, had the actual appraisals in hand and were able to retain their own expert and present their contrary views during the administrative process that informed the Forest Service's final May 2022 decision. *See* AR 47757-83.

NEPA did not require analysis of how any land-exchange alternative was "necessary" to equalize the appraised values, because such an exercise misconceives the nature of the land exchange.  Mt. Hood Meadows offered to convey its property in the extent or configuration it chose.  *See* AR 49930, 49932, 49935.  The  Forest Service then accepted that conveyance under the necessary value equalization criteria.  The process of considering lands for exchange to the Forest Service is not within the agency's executive or discretionary purview, and in fact is first premised on a voluntary offer of conveyance from Mt. Hood Meadows.  Section 1206(a)(2)(A), (H)  The non-Federal land ultimately included in the exchange are those that Mt. Hood Meadows offered to convey considering the 2019 appraisal valuations, the equalization requirements of FLPMA, and the flexibility provided the exchange parties by Section 1206(a)(2)(H).  The private lands not included in the final exchange are those that Mt. Hood Meadows did not offer to convey and which the government is not authorized to condemn under the exchange legislation.  *See* AR 49931-32.

///

///

Page 25    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

**4.    Plaintiffs are wrong regarding when the Forest Service disclosed appraised values.**

Plaintiffs are wrong that it was only in the May 2022 final Record of Decision that the Forest Service disclosed appraised values. Pls.' Mem. 18. In fact, the values were disclosed more than a year earlier, in the February 2021 draft Record of Decision. AR 46993, 46995. Further, Plaintiffs had access to the extensive appraisal reports by 2019. *See*, *e.g.*, AR 49938 (finding that Thrive "was provided with the appraisals by 2019").

**5.    Plaintiffs are wrong regarding what NEPA requires in a Record of Decision.**

Plaintiffs attempt to fault the final Record of Decision for not analyzing or considering alternatives in the way Plaintiffs demand. Pls.' Mem. 18. But there is no NEPA duty for a Record of Decision to study alternatives; that is instead the role of an EIS. Plaintiffs are also wrong in arguing that the Record of Decision required "findings" regarding the "necessity" of less than an all-for-all exchange. Pls.' Mem. 18. There is no requirement in Section 1206(a)(2) that the exchange—centered first on a voluntary offer by Mt. Hood Meadows to convey its property—requires such documentation. *See also infra* Argument II.A.3. Nor do Plaintiffs explain how an appraisal/economic valuation provision under Section 1206(a)(2) creates a NEPA environmental-effects duty. Mt. Hood Meadows was willing to offer most of (nearly 80% of) its Cooper Spur

Page 26    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

land, and the Forest Service accepted that offer under the dictates of Section 1206(a)(2).

### 6.    Plaintiffs fail to establish any NEPA violation regarding a wetland conservation easement.

Plaintiffs, finally, argue that the Forest Service violated NEPA because the Final EIS should have considered a wetland conservation easement "as part of the alternatives analysis." Pls.' Mem. 18-19. This is wrong. Per the 2018-enacted Clarification Act, Congress specifically allowed the Forest Service and Mt. Hood Meadows the option to "mutually agree" on a specific conservation easement. Section 1206(a)(2)(G)(i) (2018). If the two parties were to agree to that easement, Congress required that the easement "shall be finalized not later than 120 days after the enactment of" the Clarification Act. *Id*. The February 2021 final EIS appropriately informed the public that the Forest Service and Mt. Hood Meadows had mutually agreed, under the congressional deadline, not to establish the easement. AR 47097, 47118, 47121-22. There was no violation of a NEPA-alternatives duty, because Congress established in 2018 that the easement was not a matter of Forest Service NEPA discretion but instead a joint decision with Mt. Hood Meadows that was to be finalized by a specific date as opposed to being a matter left open to future NEPA process.

For these reasons, this Court should grant summary judgment to Defendants against Count 3 of Plaintiffs' NEPA claim.

### D. Under NEPA, the appraisals were not illegally excluded from the EIS.

Summary judgment for Defendants is also appropriate against Count 4 of Plaintiffs' NEPA claim. *See* ECF 4 ¶ 51(alleging Count 4 of NEPA claim). Plaintiffs argue that the Forest Service violated NEPA because a NEPA regulation supposedly required that the appendix for the final EIS include the appraisals prepared for the exchange parcels. Pls.' Mem. 19-20.

Under NEPA, an EIS "must address the significant environmental effects" of a proposed action. *Seven Cnty.*, 145 S. Ct. at 1507. When "determining whether an agency's EIS complied with NEPA, a court should afford substantial deference to the agency." *Id.* at 1511-12.

Plaintiffs' Count 4 fails on each of three grounds:

### 1. NEPA did not require that the appraisals be physically attached to the final EIS.

First, NEPA did not require that the appraisals be physically attached to the final EIS. As the Forest Service found during the administrative objections process, the appraisals "relate to dollar valuations for real property parcels," and the EIS analyzed the "environmental effects of the land exchange as appropriate under NEPA." AR 49933. Valuing the dollar values of the land

Page 28     Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

parcels is an economic endeavor rather than an assessment of the environmental effects of the proposed land exchange. Under NEPA, an EIS "must address the significant *environmental* effects" of a proposed action. *Seven Cnty.*, 145 S. Ct. at 1507 (emphasis added). Appraisals are required under other statutes including FLPMA—but not NEPA—because FLPMA requires that lands exchanged have approximately equal monetary values. *See* 43 U.S.C. § 1716(b); Section 1206(a)(2)(B).

Because appraisals are economic valuation documents, not environmental-effects reviews, the Forest Service was reasonable under NEPA in not attaching the appraisals to the final EIS itself. When "determining whether an agency's EIS complied with NEPA, a court should afford substantial deference to the agency." *Id.* at 1511-12.

The district court ruling in *Colorado Wild Public Lands, Inc. v. Shoop*, 2021 WL 1138061, * 8 (D. Colo. March 25, 2021) is instructive. In *Shoop*, plaintiffs challenged a federal land exchange and asserted a NEPA claim for an agency's failure to timely disclose appraisals. *Id.* *8-*9. The district court rejected the claim, noting that land appraisals are not "environmental" documents "and do not implicate the environmental concerns that NEPA addresses." *Id.* *8. As *Shoop* found, NEPA "cannot be reasonably understood as encompassing of parity in the value of the parcels to be exchanged." *Id.*

Page 29    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

As *Shoop* held, NEPA does not require disclosure of appraisals because NEPA relates to "the protection of the environment" and the physical environment "cannot be reasonably understood as encompassing of parity in the value of the parcels to be exchanged." *Id*. at 8-9. In other words, property valuation is environmentally neutral and beyond the scope of NEPA. *See San Luis Valley Ecosystem Council v. U.S. Forest Serv.*, No. 04-CV-01071, 2009 WL 792257, *6 (D. Colo. Mar. 23, 2009) (finding that a challenge to a land exchange based on supposedly "inadequate" appraisals "implicates no environmental impacts sufficient to give rise to NEPA liability" and finding appraisal values are "completely irrelevant to the NEPA claim").

### 2.    Section 1206(a)(2) supersedes the now-rescinded NEPA regulation.

Second, Count 4 fails because even if the (now-rescinded) NEPA regulation[10] might otherwise apply to disclosures of appraisals in an EIS appendix, it was superseded by the specific and contrary congressional requirement for this land exchange in Section 1206(a)(2). Under Section 1206(a)(2)(D)(iv), Congress specified that the Forest Service make the appraisals "available for public review" "[b]efore completing the land

---

[10] The regulation, 40 C.F.R. § 1502.19, is a Council on Environmental Quality regulation that was formally rescinded in 2025. *See* https://www.federal register.gov/documents/2025/02/25/2025-03014/removal-of-national-environmental-policy-act-implementing-regulations (last visited Oct. 6, 2025).

Page 30    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

exchange." In the final EIS, the Forest Service informed the public of this fact. AR 47106, AR 49933. Further, the final EIS announced that any member of the public could request a copy of the appraisals by submitting a Freedom of Information Act ("FOIA") request via email. AR 47106, AR 49938. There is no NEPA violation because Section 1206(a)(2)(D)(iv) provided a specific timing provision for public review of the appraisals in this particular land exchange and the Forest Service did not violate this provision. *See* AR 49938 (noting that "the continued availability of the appraisals to the public through a simple email FOIA request was not a violation of the exchange legislation").

### 3. Plaintiffs had the appraisals for years before the final EIS was issued.

Third, Plaintiffs' Count 4 fails and elevates form over substance because the Forest Service provided Plaintiffs with the appraisals years before the final EIS was published in February 2021. The agency supplied Plaintiffs with the 2017 appraisals in October 2017 and the 2019 supplemental appraisals in December 2019. *See* AR 44637-38. Years before NEPA process was complete, and years before the final EIS was issued, Plaintiffs already had the appraisals in hand. *See* AR 49933 (noting that Thrive "already received the appraisals"); AR 49938 (noting that Thrive "was provided with the appraisals by 2019"). The Forest Service respected Plaintiffs' interest in the appraisals and engaged with Plaintiffs in a way that allowed Plaintiffs to engage their own expert during

the administrative process and provide their views to the agency. *See* AR 47778-82, 47789-865. Plaintiffs were not compromised in being heard on the appraisals regarding the land exchange.

For these reasons, this Court should grant Defendants summary judgment against Count 4 of Plaintiffs' NEPA claim.

## II.    The Forest Service complied with the exchange legislation.

The Forest Service's final Record of Decision, AR 50369-87, complies with the exchange legislation. The Record of Decision discussed the legislation, explained the selected land-exchange alternative, and noted the agency's interpretation of the legislation and why it disagreed with Plaintiffs' interpretation. *See*, *e.g.*, AR 50372-77, 50386.

### A.    The Forest Service authorized a permissible exchange acreage.

This Court should grant summary judgment to Defendants against Count 1 of Plaintiffs' exchange legislation claim. *See* ECF 4 ¶¶ 53-54 (alleging Count 1).

#### 1.    The final EIS accurately accounted for congressional developments that occurred after the draft EIS.

After the draft EIS was issued in 2016, Congress in 2018 enacted the Clarification Act allowing for a lower-acreage exchange, and the 2021 final EIS explained this development. AR 47076. The wording in the final EIS is

Page 32    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

consistent with the congressional amendments regarding the land exchange.

Plaintiffs are incorrect that the Forest Service lacked discretion under the exchange legislation to authorize an exchange that differed from what was described in the 2016 draft EIS. Pls.' Mem. 21. Plaintiffs insinuate that the Forest Service illegally changed its mind because the 2021 final EIS indicated that not all the public/private lands necessarily would be exchanged. *Id.* Not so; Section 1206(a)(2)(H) expressly allowed for less than an "all-for-all" exchange.

> **2. The Forest Service's interpretation of the "lesser area" provision in Section 1206(a)(2)(H) is superior to Plaintiffs'.**

Plaintiffs argue that the Forest Service violated the exchange legislation because they believe it allows exchange of a lesser area of <u>either</u> Federal <u>or</u> non-Federal land. Pls.' Mem. 22-23. In Plaintiffs' view, the Forest Service's final Record of Decision is arbitrary and capricious because it authorized an exchange with a lesser area of both Federal and non-Federal land. *Id.* As Defendants explain below, Plaintiffs are incorrect.

> **a. The Forest Service's interpretation is well supported.**

The final Record of Decision was neither arbitrary nor capricious; the Forest Service's legislative interpretation is appropriate. The "lesser area" provision in the legislation is expressly provided "without limitation" and is

Page 33    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

subject only to the approval of the government and Mt. Hood Meadows. Section 1206(a)(2)(H)(i).

The Forest Service was transparent and rational in how it interpreted the legislation. As the agency told Plaintiffs' counsel in June 2021, "In light of its role in administering and completing the land exchange, [it] interprets the word "or" to be non-exclusive . . . in the context of the legislation." AR 49936. The agency noted that its interpretation "considers the broad congressional allowance that the lesser-area provision applies 'without limitation' and that Congress did not use exclusive "either . . . or" language. *Id.* According to the Forest Service, "the appropriate interpretation of the exchange legislation is that either side to the exchange, the Forest Service or Mt. Hood Meadows, may convey a lesser area if necessary to equalize values, rather than only one side having the option to convey a lesser aera." AR 49936.

Statutory interpretation conventions show that courts do not mechanically interpret every "or" as disjunctive, but rather that courts interpret the word "or" according to context. *See, e.g., Union Ins. Co. v. United States*, 73 U.S. (6 Wall.) 759, 764 (1867) ("[W]hen we look beyond the mere words to the obvious intent we cannot help seeing that the word 'or' must be taken conjunctively."); *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir. 2003); *Willis v. United States*, 719 F.2d 608, 612–13 (2d Cir. 1983) ("It is settled that

Page 34    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

'or' may be read to mean 'and' when the context so indicates."). The same is true with contract interpretation. "[T]he terms 'and' and 'or' may be interchanged, in context, to carry out the parties' intent and the agreement's purpose." *Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033, 1037 (8th Cir. 2007) (collecting cases). *See Noell v. Am. Design, Inc., Profit Sharing Plan*, 764 F.2d 827, 833 (11th Cir. 1985) ("It is an established principal that the word 'or' is frequently construed to mean 'and,' and *vice versa*, in order to carry out the evident intent of the parties.") (cleaned up).

Courts do not defer to agency statutory interpretations, but may "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Agency interpretations may provide guidance when considering statutory ambiguity. *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024). While an agency's statutory interpretation is not binding, it may be "especially informative to the extent it rests on factual premises within the agency's expertise." *Loper Bright*, 603 U.S. at 402 (cleaned up).

Here, the Forest Service's legislative interpretation is appropriate considering not just the wording of the exchange legislation but the agency's responsibility for administering and authorizing the land exchange. The

Page 35    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

Forest Service's interpretation is appropriate because it recognizes that Congress did not mean to force Mt. Hood Meadows to offer to convey all its non-Federal land at Cooper Spur. As the Forest Service told Plaintiffs in June 2021, the exchange will involve "those private lands that Mt. Hood Meadows offered to convey" considering the 2019 supplemental appraisals and other factors. AR 49930. That non-Federal land at Cooper Spur not included in the exchange is what Mt. Hood Meadows "did not offer to convey and which the Forest Service is not authorized to 'take' under the exchange legislation." *Id*. *See* AR 49935 (noting that the land exchange requires the "mutual agreement" of the government and Mt. Hood Meadows); AR 28267 (noting that federal land exchanges are "voluntary real estate transactions").

Here, with Mt. Hood Meadows' offer to convey just under 80% of its non-Federal land, it would not have been permissible for the government to convey both parcels of Federal land at Government Camp. The appraised value of the non-Federal land that Mt. Hood Meadows offered was just under $4.1 million. *See* AR 50375. With the western Federal parcel appraised at just over $3.7 million, it would have been impermissible to also convey the eastern Federal parcel, because that parcel is appraised at just under $1.9 million. *See* AR 44561. The two Federal parcels together are valued at just under $5.7 million—$1.56 million more than the offered non-Federal land. AR 44561,

Page 36    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

50375. Conveying both Federal parcels in return for what Mt. Hood Meadows offered to convey would have required an impermissible payment by Mt. Hood Meadows of more than 25% of the total value of the Federal land. *See* 43 U.S.C. § 1716(b).

### b. The legislative history supports the Forest Service's interpretation.

Further, the legislative history supports the Forest Service's interpretation of the "lesser area" provision. According to the Senate Report on the Clarification Act, "[i]f the appraised values of the Federal and non-Federal lands are not equal, monetary compensation may be made or <u>an adjusted land area may be conveyed</u> to equalize the values of the properties." S. Rep. 115-52 (2017), 2017 WL 1902115 at *3 (emphasis added); S. Rep. 115-59 (2017), 2017 WL 1902121, at *3 (same). This illustrates that Congress meant to provide flexibility to the exchange parties on the overall land area to be conveyed, not to rigidly limit acreage adjustments only to one side or the other.

### c. Plaintiffs' interpretation is based on a misconception about the Forest Service's role in the land exchange.

Plaintiffs argue that it was illegal for the Forest Service to "exclude" some non-Federal land—private Mt. Hood Meadows acreage at Cooper Spur— from the exchange. Pls.' Mem. 23. But the exchange legislation does not

Page 37    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

authorize the Forest Service to "take" or condemn private lands; the legislation instead is premised on an offer to convey private lands from Mt. Hood Meadows and authorizes a smaller-footprint exchange to equalize values if agreed by the exchange parties. Section 1206(a)(2)(H)(i).

Plaintiffs are also incorrect that the "entire point" of the land exchange is to "maximize the amount of land exchanged" while equalizing values. Pls.' Mem. 23. No provisions in the exchange legislation states such an intent. And to the extent that Plaintiffs rely on their 2005 settlement agreement with Mt. Hood Meadows, the Forest Service was not a party to that agreement and the exchange legislation does not incorporate or even reference it.

Further, Plaintiffs' own legislative interpretation debunks their argument that Congress meant to maximize the amount of land exchanged. That is because Plaintiffs interpret the legislation as providing that the Forest Service "is not limited in the *amount* of acreage that it can exclude from the land exchange." Pls.' Mem. 23 (emphasis in original). Given Plaintiffs' view that the Forest Service has an unlimited authority to *exclude* acreage, they have no valid argument that the legislation also means to maximize the *included* acreage.

///

///

Page 38      Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

### 3.    Plaintiffs' interpretation of the "if necessary" provision in Section 1206(a)(2)(H) is ill-supported.

Plaintiffs argue that the Forest Service violated the exchange legislation because "findings and an explanation" were "required" by Congress regarding the "necessity" of any reduction in the exchange acreage.  Pls.' Mem. 22. Plaintiffs are wrong; the legislation nowhere requires this.  Instead, the legislation provides that a lesser-area conveyance may be undertaken "without limitation" and it requires only the "approval of" the government and Mt. Hood Meadows—the actual parties to the land exchange.  Section 1206(a)(2)(H)(i). *See also supra* Argument I.C.5.

Plaintiffs are asserting a violation of a phantom statutory provision.  As the Forest Service noted to Plaintiffs' counsel during administrative proceedings, the legislation "is focused on an agreement between two parties and did not specify that the 'necessity' for the exchange parties' agreement be justified in the manner [Plaintiffs] argue[]."  AR 49936.  Courts do not impose "procedural requirements [not] explicitly enumerated in the pertinent statutes."  *Wilderness Soc'y v. Tyrrel*, 918 F.2d 813, 818 (9th Cir. 1990). Similarly, courts should not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress."  *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524-25 (1978).

Here, the parties to the land exchange agreed on a lesser-area exchange

Page 39    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

to equalize values, given the non-Federal land that Mt. Hood Meadows offered to convey, and that agreement abided by the exchange legislation. *See* AR 49936 (addressing Plaintiffs' "necessity" argument in administrative proceedings). As Forest Service personnel noted to Plaintiffs' counsel during the administrative process, the "exchange agreement is between [the Forest Service] and [Mt. Hood] Meadows and it is on these people to agree with the land exchange that is occurring." AR 49623.

Given that Mt. Hood Meadows offered to convey non-Federal land valued at about $4.1 million, and that the two parcels of Federal land are valued at more than $5.6 million, it is obvious that conveying both Federal parcels was impermissible. That would have run afoul of the exchange legislation because it would have required an equalization payment by Mt. Hood Meadows of more than 25% of the total value of the Federal land. *See* 43 U.S.C. § 1716(b).

Plaintiffs argue that it was not necessary, in their view, to undertake the land exchange with a "lesser area." Pls.' Mem. 25-26. Per the 2019 supplemental appraisals, the value of all the non-Federal land exceeds the value of all the Federal land by more than $3.4 million. *See* AR 44561, 44592. Plaintiffs, nevertheless, argue that the government could have made a $1.4 million cash equalization payment to Mt. Hood Meadows and Mt. Hood Meadows could have donated the remaining >$2 million in non-Federal land

Page 40    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

surplus value to the government. *Id.* But there is no evidence that Mt. Hood Meadows had any interest in donating to the government. Plaintiffs' argument has no support in the record.

Plaintiffs argue that the Forest Service should have authorized a land exchange wherein Mt. Hood Meadows did not convey its Tract 5 but offered to convey all the other non-Federal land in return for both Federal parcels and a sizable cash payment from the government and/or a donation from Mt. Hood Meadows. Pls.' Mem. 26. But Mt. Hood Meadows was not interested in such a conveyance of its non-Federal land and the Forest Service did not have authority under the exchange legislation to force Mt. Hood Meadows to offer to convey everything except Parcel 5.

For these reasons, this Court should grant summary judgment to Defendants against Count 1 of Plaintiffs' exchange legislation claim.

**B.    The Forest Service was neither arbitrary nor capricious in relying on the appraisals.**

This Court should grant summary judgment to Defendants against Count 3 of Plaintiffs' exchange legislation claim. *See* ECF 4 ¶¶ 56 (alleging Count 3).

The final Record of Decision was neither arbitrary nor capricious in relying on the 2019 appraisals. Under the exchange legislation, the Forest Service and Mt. Hood Meadows were responsible for jointly selecting an

Page 41    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

appraiser to appraise the values of the Federal and non-Federal land. Section 1206(a)(2)(D)(i). In October 2019, the parties' appraiser, Richard A. Maloy, produced these appraisals. AR 44249-559 (Federal land); AR 43755-4248 (non-Federal land). The appraisals were written to confirm to national recognized appraisal standards. *See* AR 44250, 43757.

In November 2019, the Forest Service's review appraiser approved the 2019 supplemental appraisals, finding they used appropriate methods and reached reasonable conclusions, without any significant departures or deficiencies from national recognized appraisal standards. *See* AR 44571, 44581, 44582 (Federal property); AR 44611, 44626, 44628 (non-Federal property). In June 2021, the Forest Service in administrative proceedings addressed Plaintiffs' concerns about the appraisals. AR 49920-24.

### 1.    Plaintiffs ignore their own appraiser's opinions and the principle of deference to agency expertise.

Plaintiffs argue that the final Record of Decision violated the exchange legislation because the Maloy appraisals were supposedly not conducted in accordance with nationally recognized appraisal standards. Pls.' Mem. 27-34.

According to Plaintiffs, Maloy undervalued the Federal land and overvalued the non-Federal land. Pls.' Mem. 29. But Plaintiffs ignore that the record shows that an appraiser <u>they selected</u>—Steven A. Hall—found that the value of the Federal land was significantly below that of the non-Federal

Page 42    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

land—like the Maloy appraisals. *See* AR 29578 (Thrive/Hall valuation of Cooper Spur non-Federal land at $5,542,000); AR 29328-29 (Thrive/Hall valuation of Government Camp Federal land at $3,810,000); AR 47756 (noting the similar valuation differences between the Federal and non-Federal land in both the Hall and Maloy appraisals). Plaintiffs are arguing against the same kind of valuation findings their own appraiser Hall reached for the same parcels.

In attacking the Maloy appraisals, Plaintiffs would instead rely on another appraiser, Don Palmer, to enter a "battle of the experts." *See id.* at 30. But in judicial review under the APA, well-established precedent strongly disfavors such battles. "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 375, 378 (1989). *Accord Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 449 (9th Cir. 2024) (cleaned up).

This Court should reject Plaintiffs' attempt to try to overturn the Forest Service's expert reliance on the appraisals. "[E]xperts in every scientific field routinely disagree." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 473 (9th Cir. 2010) (rejecting a "battle of the experts" challenge to agency findings) (cleaned

Page 43    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

up).  "Complete factual support" for an agency's prediction is not "possible or required."  *Cal. by and through Becerra v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020) (en banc) (cleaned up).

Courts defer to an agency's determination in an area—such as land appraisal—involving a "high level of technical expertise."  *Selkirk Conservation All. v. Forsgren*, 336 F.3d 944, 954 (9th Cir. 2003) (cleaned up); *Greer Coal., Inc. v. U.S. Forest Serv.*, 2011 WL 671750, *9-16 (D. Ariz. 2011) (rejecting objections to appraisal), *aff'd*, 470 Fed. App'x 630 (9th Cir. 2012).  *See also Greenpeace Action v. Franklin*, 14 F.3d 1324, 1333 (9th Cir.1992) ("To set aside the [agency's] determination in this case would require us to decide that the views of [Plaintiffs'] experts have more merit than those of the [agency's] experts, a position we are unqualified to take."); *Idaho Sporting Congress, Inc. v. United States Forest Serv.*, 92 F.3d 922, 928 (9th Cir. 1996) ("While the administrative record reflects disagreement in the opinions and recommendations of various federal agencies consulted by the Forest Service before reaching its decisions . . . , the Forest Service was entitled to rely on the opinions and recommendations of its own experts.").

///

///

Page 44    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

### 2. Plaintiffs fail to establish that the Forest Service was arbitrary and capricious in relying on the appraisal of the Federal land.

Plaintiffs argue that the Maloy appraisal undervalued the Federal land. Pls.' Mem. 30-31. But Plaintiffs fail to establish the Forest Service was arbitrary and capricious in relying on the appraisal.

Plaintiffs make two primary arguments. First, they argue that Maloy failed to include confirmation sources for the four comparable sales used, other than the sale deeds. But Plaintiffs' expert acknowledged that Maloy confirmed comparable Sale 4 "with the broker." AR 49473. As for the other three comparable sales, the record shows that "[e]ach sale was verified through a participating party and each sale was inspected and photographed." AR 49561; AR 49587; AR 49593-96 (identifying individuals who verified each of the comparable sales). As for comparable Sale 2, further, Plaintiffs' expert noted that another "knowledgeable appraiser" undertook research that "supported the sale price" of $60,435/acre. AR 49475. This is very close to Maloy's finding of a sale price of $61,333/acre, AR 44377, and fails to undermine the Forest Service. Plaintiffs also claim that Maloy failed to adjust for comparable sales that were negotiated 1.5 to 2 years prior to closing, but this is wrong because Maloy applied a market condition adjustment. *See* AR 49587.

Second, Plaintiffs argue that Maloy wrongly used gross acreage instead

Page 45    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

of net acreage for comparable Sales 1 and 3, because those sites are 50% undevelopable.   This is incorrect.   According to Maloy, at the time of the 2019 appraisal it was suspected that Sale 1 was not "totally usable and [we] said so in the appraisal sale information."   AR 49587.   Further, because the 2019 appraisal "could not verify the exact usable size at the time, [it] gave less weight to the sale."   *Id.*   In addition, there is additional expert analysis in the administrative record that supports Maloy's use of Sale 3.   AR 47754-56.

For these reasons, this Court should grant summary judgment to Defendants against Count 3 of Plaintiffs' exchange legislation claim.

### 3.    Plaintiffs fail to establish that the Forest Service was arbitrary and capricious in relying on the appraisal of the non-Federal land.

Plaintiffs argue that Maloy overvalued the non-Federal land.   Pls.' Mem. 32-34.   But deference to the Forest Service's reliance on the appraisal is particularly appropriate because it involves questions of scientific methodology and/or technical expertise.   *See Marsh*, 490 U.S. at 376–77.

Plaintiffs first argue that Maloy supposedly used an "incorrect valuation approach" for valuing 156 acres of zoned F-1 land at Cooper Spur and should have used "sales comparison" rather than "cost."   *See* AR 47833.   But Plaintiffs fail to establish the Forest Service was arbitrary and capricious under the exchange legislation.   The legislation did not require that the appraisal use a

Page 46    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

particular valuation approach and Plaintiffs fail to establish how Maloy's approach violates any national recognized appraisal standard. *See* Section 1206(a)(2)(D)(i). Plaintiffs' disagreement with an appraisal methodology fails to show a violation of federal law. Further, Plaintiffs mischaracterize and oversimplify Maloy's approach; Maloy looked to comparable land sales as part of his valuation analysis of the 156 acres of F-1 property. *See, e.g.*, AR 43812-20, 43836.

Second, Plaintiffs argue that Maloy failed to include confirmation sources for "any" comparable sales in approach to valuing the 156-acre F-1 parcel. *See* AR 47843-44. But Plaintiffs' argument runs headlong into their argument that Maloy "used the cost approach to value" for these lands. Given Plaintiffs' representation that Maloy used the cost approach, there would be no need for Maloy to confirm comparable sales. Plaintiffs also fail to establish how—if Maloy needed to confirm comparable sales beyond deeds and site photos—confirmation would have made any difference in valuation. Further, for the mountain inn (Cooper Spur Inn) parcel that is adjacent to and closely associated with the F-1 parcel, the record shows that Maloy looked to "closely comparable" sales (AR 43836) and confirmed each sale through both a deed and a participating party. *See* AR 42138-73.

Third, Plaintiffs argue that Maloy's appraisal methodology looked to

Page 47    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

inappropriate comparable sales and that his $14,500/acre valuation of the 156 acres of F-1 lands was too high. But Plaintiffs fail to establish the Forest Service was arbitrary and capricious under the exchange legislation; the legislation did not require that the appraisal use a particular valuation approach and Plaintiffs fail to establish how Maloy's approach violates any national recognized appraisal standard. *See* Section 1206(a)(2)(D)(i). Further, the record shows a rational basis for the Maloy valuation. As Maloy noted, legal uses on the F-1 land include outdoor mass gatherings, AR 43820, and the F-1 land includes an established home site and is adjacent to the Cooper Spur Inn that "has been a popular gathering site for many years." AR 49589. "This proximity is more valuable than typical rural locations." *Id.* *See also* AR 43810-11, 43820 (noting that the F-1 land's "highest and best use" is beyond "simple timberland" and instead supports "recreational hospitality uses relating to its close proximity to Mount Hood").

Finally, Plaintiffs argue that Maloy did not "adequately" account for what is legally allowable on the non-Federal land.[11] AR 49586. But as with most of their other appraisal arguments about the non-Federal land, Plaintiffs

---

[11] Plaintiffs state that Maloy did not "adequately account for" what is legally allowable "on the federal land in Government Camp." Pls.' Mem. 33. But Defendants assume that Plaintiffs meant to refer to the non-Federal land in Cooper Spur, as this section of their argument addresses only the non-Federal land.

fail to establish the Forest Service was arbitrary and capricious under the exchange legislation; Plaintiffs fail to establish how Maloy's weighing of local zoning restrictions and allowances violates any national recognized appraisal standard. *See* Section 1206(a)(2)(D)(i). Plaintiffs also mischaracterize the Maloy appraisal. The appraisal rationally addressed county zoning and related uncertainties regarding the F-1 property. AR 43797-803. There is support for the appraisal's statement that the F-1 land "would demand a premium in spite of the zoning limitations." AR 43808. Maloy noted the official view of Hood River County that the tennis court and other buildings were "in legal conformity" with county zoning code. AR 43809-10. At the same time, Maloy noted that the "spa area" is non-conforming under local zoning and therefore was given no value in the appraisal. *Id*. Further, Maloy in developing his appraisal met with county personnel familiar with Cooper Spur and county personnel reviewed the appraisal's section on land development issues. AR 49586.

For these reasons, this Court should grant summary judgment to Defendants against Count 3 of Plaintiffs' exchange legislation claim.

## C.    The final appraised values are valid.

This Court should, finally, grant summary judgment to Defendants against Count 4 of Plaintiffs' exchange legislation claim. *See* ECF 4 ¶¶ 57-60

Page 49    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood
             River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

(alleging Count 4).

Section 1206(a)(2)(D)(iii) provides that the final appraised values in the land exchange are valid for three years, and the Forest Service acted consistent with that provision. Under the Forest Service Handbook, an executed land exchange agreement between the agency and a non-Federal party "commits both parties to accept as final, the approved appraised values with no further updating necessary, unless there is a change to the estate to be conveyed or acquired." AR 14558. Here, the government approved the final appraised values on November 30, 2019. AR 44560-636. Then, less than three years later, on May 4, 2022, the Forest Service and Mt. Hood Meadows executed the exchange agreement. AR 50410-25. That exchange agreement, per the Forest Service Handbook, locked in the final appraised values. *See* AR 14558. The final appraised values are therefore valid. Moreover, the exchange agreement executed by the Forest Service and Mt. Hood Meadows established that the appraised values of the exchange properties "shall remain fixed as long as this agreement is in effect." AR 50412.

The final appraised values are valid, as the three-year validity period runs until the execution of an exchange agreement and the appraisal values were fixed by the parties' executed agreement. Plaintiffs argue, very briefly, that because the final appraisals were approved earlier than three years ago

Page 50       Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

from now, they are now illegally outdated Pls.' Mot. 35. But Plaintiffs fail to account for the Forest Service Handbook and fail to account for the executed exchange agreement.

This Court should therefore grant summary judgment for Defendants against Count 4 of Plaintiffs' exchange legislation claim.

## CONCLUSION

For these reasons, this Court should grant Defendants summary judgment against all of Plaintiffs' claims and deny Plaintiffs summary judgment on their claims.

Dated this 6th day of October 2025.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

/s/ Sean E. Martin
SEAN E. MARTIN
Assistant United States Attorney

Page 51    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

## CERTIFICATE OF COMPLIANCE

The preceding memorandum complies with the applicable word-count limit under LR 7-2(b) because it comprises 10,971 words, based on the word-count of the word processing system used to prepare the memorandum. This word count includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, cross-motion, signature block, and any certificates of counsel.

Dated this 6th day of October 2025.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

/s/ Sean E. Martin
SEAN E. MARTIN
Assistant U.S. Attorney

Page 52    Defendants' Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR