**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2936
sean.martin@usdoj.gov
Telephone: (503) 727-1010
      Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **THRIVE HOOD RIVER;** **OREGON WILD; SIERRA CLUB;** **OREGON NORDIC CLUB;** **FRIENDS OF MOUNT HOOD;** **OREGON KAYAK AND CANOE** **CLUB;** and **MIKE MCCARTHY**, | Case No. 3:22-cv-01981-AR |
| | **DEFENDANTS' REPLY IN** **SUPPORT OF CROSS-MOTION** **FOR SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | |
| **META LOFTSGAARDEN;** and **UNITED STATES FOREST** **SERVICE**, | |
| Defendants, | |
| and | |
| **MT. HOOD MEADOWS OREG.,** **LLC,** | |
| Defendant-Intervenor. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

ARGUMENT ................................................................................... 1

I.    The Forest Service complied with the exchange legislation ............... 1

    A.    Summary judgment is appropriate against Count 1, because the Forest Service authorized a permissible exchange acreage ..... 2

        1.    Plaintiffs' argument that the Forest Service violated the APA, but not the exchange legislation, is legally deficient ....... 2

        2.    Plaintiffs' statutory interpretation of the exchange legislation is unpersuasive ......................................... 4

        3.    Mt. Hood Meadows' 2009 offer did not bind the parties to an all-for-all exchange ............................................. 6

        4.    Plaintiffs' other exchange legislation arguments go nowhere .. 9

    B.    Summary judgment in favor of Defendants on Count 3 is appropriate because the Forest Service rationally relied on the Maloy appraisals ................................................. 11

        1.    Plaintiffs ignore their own appraiser's opinions ................... 12

        2.    Plaintiffs apparently concede Defendants' points regarding the appraisal of the non-Federal lands ................. 12

        3.    Plaintiffs fail to establish that the Forest Service was arbitrary and capricious in approving and relying on the appraisal of the Federal lands ................................ 13

II.    The Forest Service complied with NEPA ....................................... 16

    A.    Plaintiffs fail to establish a NEPA violation regarding reservation of a conservation easement ..................................... 17

B.    Under NEPA, the appraisals were not illegally excluded from the EIS ........................................................................ 20

C.    The Forest Service EIS rationally analyzed the environmental effects of the land exchange by assessing the effects of the maximal exchange acreage alternative ........................................ 24

CONCLUSION ................................................................................. 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Backes v. Bernhardt*, 523 F. Supp. 3d 1233 (D. Or. 2021) ................................. 3

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, 153 F.4th 869
    (9th Cir. 2025) ..................................................................................... 16, 18-19

*Colorado Wild Public Lands, Inc. v. Shoop*, No. 17-cv-01564-MSK,
    2021 WL 1138061 (D. Colo. March 25, 2021) ............................................... 22

*El Rescate Legal Servs., Inc. v. Executive Off. of Immigr. Rev.*,
    959 F.2d 742 (9th Cir. 1991) ............................................................................ 3

*Headwaters, Inc. v. Bureau of Land Mgmt.*, 914 F.2d 1174
    (9th Cir. 1990) ........................................................................................... 24-25

*Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095 (9th Cir. 2016) ........ 21-22

*Metropolitan Edison Co. v. People Against Nuclear Energy*,
    460 U.S. 766 (1983) ........................................................................................ 23

*Perales v. Casillas*, 903 F.2d 1043 (5th Cir.1990) ............................................ 3

*Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089
    (9th Cir. 2025) ................................................................................................. 19

*San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971
    (9th Cir. 2014) ............................................................................................. 13-14

*Seven Cnty. Infrastructure Coal., Inc. v. Eagle Cnty., Colo.*,
    145 S. Ct. 1497 (2025) ..................................................... 16, 18, 20, 22-23, 24

*Stand Up for California! v. U.S. Dep't of Interior*, 959 F.3d 1154
    (9th Cir. 2020) ................................................................................................. 19

*Student Loan Fund of Idaho, Inc. v. U.S. Dep't of Educ.*, 272 F.3d 1155
    (9th Cir. 2001) ................................................................................................... 5

*United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007) ..................................... 5

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978) ............ 3

**FEDERAL STATUTES**

"Mt. Hood exchange legislation"; Section 1206(a) to Omnibus Public Land
    Management Act of 2009 (as amended 2018) ........................................*passim*


43 U.S.C. § 1716 ............................................................................................ 6

43 U.S.C. § 1716(b) ................................................................................... 6, 8

**FEDERAL REGULATIONS**

40 C.F.R. § 1502.19 ..................................................................................... 20

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Mt. Hood land exchange authorized in 2022—after years of U.S. Forest Service process, outreach, and analysis—will increase public lands on the mountain by more than 530 net acres, create federal wilderness protections for more than 1,700 acres of other federal public lands at Mt. Hood, and usher in new watershed-protection status for more than 2,700 acres at the mountain. *See* AR 50374-77.

Plaintiffs would throw all this public good away because they believe the land exchange should have forced Mt. Hood Meadows to convey every acre of its private property at Cooper Spur. But as Defendants explain below, neither Plaintiffs' exchange-legislation claim nor their National Environmental Policy Act ("NEPA") claim has merit. This Court should grant Defendants summary judgment against Plaintiffs' claims.

## ARGUMENT

### I.    The Forest Service complied with the exchange legislation.

As Defendants explained, the Forest Service's May 2022 Record of Decision (AR 50369-87) is consistent with the exchange legislation. Defs.' Cross-Mot. 32-51.

Plaintiffs have conceded two of the four counts brought under their exchange legislation claim. They have chosen not to pursue Count 2 (*see* ECF

74 at 2 n.1), and their latest summary judgment brief (ECF 85) articulates no response to Defendants' points against Count 4. *See* Defs.' Cross-Mot 49-51.

Defendants explain below why summary judgment is appropriate against Count 1 and Count 3 of Plaintiffs' exchange-legislation claim.

## A.    Summary judgment is appropriate against Count 1, because the Forest Service authorized a permissible exchange acreage.

### 1.    Plaintiffs' argument that the Forest Service violated the APA, but not the exchange legislation, is legally deficient.

Plaintiffs do not respond to Defendants' points establishing that either side or both sides to the land exchange may convey a lesser area if necessary to equalize values, rather than only one side being eligible to convey a lesser area. *See* Defs.' Mot. 33-38.

Plaintiffs, further, concede that the exchange legislation did not require that the Forest Service provide findings and an explanation regarding the "necessity" of a reduction in the exchange acreage. Pls.' Reply 5.

Plaintiffs, nonetheless, argue that the Forest Service violated the Administrative Procedure Act ("APA")—not the exchange legislation—because the agency did not provide findings or an explanation regarding the "necessity" of the reduction in acreage. Pls.' Reply 5-6.

This is an invalid argument for an APA violation, because 1) Plaintiffs

acknowledge that the exchange legislation does not require a necessity finding/explanation, and 2) the APA does not provide a vehicle for enforcing rights not established in the exchange legislation.

Plaintiffs lack a valid APA claim without a showing of a requirement in the exchange legislation that is being violated. "There is no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the legal basis for the complaint." *El Rescate Legal Servs., Inc. v. Executive Off. of Immigr. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) (cleaned up). *Accord Backes v. Bernhardt*, 523 F. Supp. 3d 1233, 1244 (D. Or. 2021) (following *El Rescate* and finding "no statute establishing a duty . . . that would create a legal basis for the claim"). The provisions of the APA "do not declare self-actuating substantive rights, but rather, . . .merely provide a vehicle for enforcing rights which are declared elsewhere." *Perales v. Casillas*, 903 F.2d 1043, 1050 n.4 (5th Cir.1990) (citing *El Rescate*, 959 F.2d at 753). Courts should not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524-25 (1978).

Even aside from this fatal legal problem with Plaintiffs' APA argument, the Forest Service provided a rational explanation <u>in the administrative record</u> for the necessity of the reduced exchange acreage. *See* AR 49936,

49934-35.  The agency provided its explanation directly to Plaintiffs' counsel during the administrative process.  Plaintiffs are therefore wrong that there was some sort of inappropriate *post hoc* rationalization by the Forest Service. *See* Pls.' Reply 5-6, 9-10.

### 2. Plaintiffs' statutory interpretation of the exchange legislation is unpersuasive.

Plaintiffs are incorrect that an "all-for-all" land exchange "is the entire statutory goal, aim, objective, and target" of the exchange legislation.  Pls.' Reply 6.  Plaintiffs fail to acknowledge that the exchange legislation provides that a lesser-area conveyance may be undertaken "without limitation" and requiring "approval" only by the government and Mt. Hood Meadows—the actual parties to the land exchange.  Section 1206(a)(2)(H)(i).[1]

Plaintiffs' statutory interpretation, based heavily on Section 1206(a)(2)(A), fails to acknowledge that the "lesser area" provision in Section 1206(a)(2)(H)(i) takes effect "[n]otwithstanding" the provisions of Section 1206(a)(2)(A).  The use of "notwithstanding" in Section 1206(a)(2)(H)(i)

---

[1] Plaintiffs repeatedly quote a fragment of Section 1206(a)(2)(H)(i).  *See* Pls.' Reply 9, 10, 11.  But Plaintiffs do not once acknowledge that the "lesser area" allowance is "without limitation" and subject to "approval" only by the government and Mt. Hood Meadows.  Plaintiffs also fail to acknowledge that Section 1206(a)(2)(H)(i) takes effect "[n]otwithstanding" the language in Section 1206(a)(2)(A).

Page 4       Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

indicates that it supersedes whatever 1206(a)(2)(A) might otherwise suggest in a vacuum. Courts construe "notwithstanding" clauses to supersede potentially conflicting statutory provisions. *See, e.g., United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) (emphasizing that "statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws"); *Student Loan Fund of Idaho, Inc. v. U.S. Dep't of Educ.*, 272 F.3d 1155, 1166 (9th Cir. 2001) ("The 'notwithstanding any other provision of law' clause demonstrates that Congress intended to supersede any previously enacted conflicting provisions.") (cleaned up). Here, Section 1206(a)(2)(H)(i) supersedes the previously-enacted Section 1206(a)(2)(A) to the extent of any potential conflict between the two provisions.

Plaintiffs attempt to shore up their statutory interpretation with a quote from a statement by Mt. Hood Meadows in earlier litigation. Pls.' Reply 7. But that goes nowhere for Plaintiffs. That statement is from 2016—several years <u>before</u> the 2018 amended exchange legislation was enacted that provides for a lesser-area conveyance.

//

//

//

//

Page 5    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

### 3.    Mt. Hood Meadows' 2009 offer did not bind the parties to an all-for-all exchange.

Plaintiffs also suggest that the Forest Service's May 2022 Record of Decision was illegal under the exchange legislation because once Mt. Hood Meadows originally offered in 2009 to convey all its interest in the non-Federal lands, that locked in a mandatory all-for-all exchange.  Pls.' Reply 8-9 (citing AR 19543).

Not so fast.  Mt. Hood Meadows' 2009 offer did not lock in the parties.  The exchange legislation required that a land exchange be in accord with section 206 of the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. § 1716, which mandates that exchanged lands be of equal value.  Section 1206(a)(2)(B); 43 U.S.C. § 1716(b).  That required additional effort to value the lands before any exchange could occur, and required that exchanged lands have equal value.

Accordingly, the Forest Service and Mt. Hood Meadows in 2010 formally executed an Agreement to Initiate that noted that a land exchange required "equal value" on both sides and that an exchange would not be "binding" until the parties executed an Exchange Agreement after an exchange was ultimately approved by the Forest Service.  AR 20482.  *See also* AR 20503 (Mt. Hood Meadows' statement to the Forest Service in 2010 that the parties' "strong

commitment" to a land exchange is "conditioned upon our mutual acceptance of the appraised valuations of the exchange properties"); AR 20597 (Forest Service's notice to the public in 2010 that it and Mt. Hood Meadows had executed an Agreement to Initiate and that the agency would now "formally evaluate" the land exchange proposal).

The 2018 congressional amendments to the exchange legislation, further, changed the framework guiding the land exchange. The 2018 amendments, namely Section 1206(a)(2)(H)(i), superseded the prior language in Section 1206(a)(2)(A). That superseded language might have otherwise directed an all-for-all exchange, subject to the FLPMA equalization requirement that was incorporated in Section 1206(a)(2)(B) of the original 2009 version of the legislation. As of 2018, however, the exchange legislation newly provided that "[n]otwithstanding" the provision in Section 1206(a)(2))(A), a lesser-area conveyance may be undertaken "without limitation" and requiring "approval" only by the government and Mt. Hood Meadows—the actual parties to the land exchange. Section 1206(a)(2)(H)(i).

Plaintiffs argue that Mt. Hood Meadows "refused" to undertake an all-for-all exchange, suggesting Meadows is "largely to blame for the reduction in exchange acreage." Pls.' Reply 9, 10 n.2. This is not true. To the contrary, the appraised values of the lands are what stood in the way of an all-for-all

Page 7     Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

exchange.  Exchanging all the Federal and non-Federal lands would not have been allowable under the exchange legislation because the Federal lands were appraised at $5,658,500 and the non-Federal lands were appraised at $9,105,440.  AR 44251, 44561 (Federal lands); AR 43764, 44592 (non-Federal lands).  An all-for-all exchange would call for an equalization payment by the government of $3,446,940, impermissible because it would exceed 25% of the total value of the Federal lands.  *See* 43 U.S.C. § 1716(b).

Nor does the exchange legislation call for or authorize a Federal taking of all of Mt. Hood Meadows' non-Federal lands or force Meadows to convey its lands.  The non-Federal lands not included in the exchange are, per the mutual approval of the Forest Service and Meadows, what Meadows ultimately "did not offer to convey and which the Forest Service is not authorized to 'take' under the exchange legislation."  AR 49932.  *See also* AR 49935 (noting that the land exchange requires the "mutual agreement" of the government and Mt. Hood Meadows); AR 28267 (noting that federal land exchanges are "voluntary real estate transactions").

Meadows' 2009 offer was not only subject to FLPMA equalization requirements but came prior to 1) the results of any appraisals under the exchange legislation and 2) the "lesser acreage" allowance that Congress enacted in 2018.  These key facts debunk Plaintiffs' framing of the 2009 offer.

Page 8       Defendants' Reply in Support of Cross-Motion for Summary
             Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case
             No. 3:22-cv-01981-AR

### 4.    Plaintiffs' other exchange legislation arguments go nowhere.

Plaintiffs' contentions regarding a supposed breach of a 2005 settlement agreement by Mt. Hood Meadows are irrelevant to their exchange legislation claim against the Forest Service.    *See* Pls.' Reply 10-11.    The exchange legislation does not reference (much less incorporate) any settlement agreement, and the Forest Service was not a party to that agreement.    *See* AR 16034-47.

Plaintiffs also complain that they believe that Mt. Hood Meadows should have donated property or value to the Forest Service to enable an all-for-all exchange.    Pls.' Reply 14-15.    But Plaintiffs fail to show that the Forest Service violated the exchange legislation in any way.    Plaintiffs note that Mt. Hood Meadows agreed to make a $1.725 million donation under a prior (2006) settlement agreement.    But the exchange legislation does not reference (much less incorporate) any settlement agreement, and the Forest Service was not a party to any such agreement.    Further, the "donation" language in the settlement agreement was premised on a "federal taxation" provision in envisioned future land-exchange legislation that "shall specify" that Mt. Hood Meadows "shall" be eligible for a tax deduction in the amount of the fair market value of property contributed.    AR 48651.    But the later-enacted exchange

legislation includes nothing specifying that Meadows is eligible for any federal tax deduction and nothing directing or requiring a donation by Meadows. This confirms that the legislation did not, and was intended to, simply codify any earlier settlement agreement involving Plaintiffs and Meadows. Under the exchange legislation, Meadows is not required to donate and the Forest Service had no discretion to require Meadows to do so. The Forest Service's Record of Decision did not violate the exchange legislation.

Plaintiffs argue in a footnote that under the Forest Service's supposed interpretation of the exchange legislation, Mt. Hood Meadows could have "refused to exchange all but one acre" of the non-Federal lands and thus obligated the government to reduce the exchange acreage to equalize appraised values. Pls.' Reply 13 n.4. This speculation is off base. The non-Federal lands, pursuant to the exchange legislation, were directed to be appraised by tax lot, not acre-by-acre. *See* Section 1206(a)(2)(D)(ii); AR 44592. And in fact, Mt. Hood Meadows is conveying nearly 80% of the non-Federal lands (603 of 770 acres across various tax lots) to the government such that the land exchange results in an overall increase in public lands on Mt. Hood by more than 530 acres. AR 50376-77. Plaintiffs are further incorrect that the "point" of the land exchange is "*maximizing* the exchange acreage." Pls.' Reply 13 n.4. The exchange legislation does not signal such an intent and Plaintiffs already

Page 10    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

acknowledged that the Forest Service is not limited in the amount of acreage
it can exclude from the exchange. *See* Defs.' Mot. 38 (citing  ECF 74, Pls.' Mem.
23).

For these reasons, this Court should grant summary judgment to
Defendants against Count 1 of Plaintiffs' exchange legislation claim.

**B.     Summary judgment in favor of Defendants on Count 3 is
appropriate because the Forest Service rationally relied on
the Maloy appraisals.**

As Defendants established, this Court should grant summary judgment
against Count 3 of Plaintiffs' exchange legislation claim.  See Defs.' Mot. 41-
49.

The Forest Service's review appraiser rationally approved the 2019
Maloy appraisals, finding they used appropriate methods and reached
reasonable conclusions without any significant departures or deficiencies from
national recognized appraisal standards.  *See* AR 44571, 44581, 44582 (Federal
lands); AR 44611, 44626, 44628 (non-Federal lands).   Further, the Forest
Service's May 2022 Record of Decision was neither arbitrary nor capricious in
relying on the agency's review appraiser's approval of the Maloy appraisals
and additional information regarding the lands at issue.  *See* AR 49920-25
(Forest Service pre-decision response to administrative objections).

Page 11     Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case
No. 3:22-cv-01981-AR

### 1.     Plaintiffs ignore their own appraiser's opinions.

Plaintiffs believe that the Forest Service violated the exchange legislation because the Maloy appraisal undervalued the Federal lands.  Pls.' Reply 17.  But as Defendants established—to no response from Plaintiffs—the administrative record shows that an appraiser <u>Plaintiffs</u> selected—Steven A. Hall—found the value of the Federal lands significantly below the value of the non-Federal lands—just like the Maloy appraisals.  *See* Defs.' Mot. 42-43. Under Hall's appraisals, the Federal lands were valued at about 69% of the value of the non-Federal lands.  *See* AR 29328-29, 29578.  Under the Maloy appraisals, similarly, the Federal lands were valued at about 62% of the value of the non-Federal lands.  *See* AR 44561, 44592.

Plaintiffs cannot show the Forest Service was somehow arbitrary and capricious on an administrative record revealing that Plaintiffs' own appraiser Hall reached very similar valuation differentials.

### 2.     Plaintiffs apparently concede Defendants' points regarding the appraisal of the non-Federal lands.

As Defendants otherwise established in detail, the Forest Service was neither arbitrary nor capricious in relying on the Maloy appraisal of the non-Federal lands.  Defs.' Mot. 46-49.

In their ensuing brief, Plaintiffs failed to address—much less rebut—any

of Defendants' points regarding the appraisal of the non-Federal lands.  This Court should therefore grant summary judgment to Defendants against Count 3 regarding the non-Federal lands.

> **3.      Plaintiffs fail to establish that the Forest Service was arbitrary and capricious in approving and relying on the appraisal of the Federal lands.**

As Defendants explained, Plaintiffs fail to establish that the Forest Service was arbitrary and capricious under the APA in finding that the Maloy appraisal of the Federal lands complied with the exchange legislation and relying on it for the exchange.  Defs.' Mot. 45-46; AR 44249-559 (Maloy appraisal of Federal lands); AR 44560-89 (Forest Service review appraiser's approval of the Maloy appraisal).

Plaintiffs do not meet their burden to establish that the Forest Service was arbitrary and capricious in finding that the Maloy Federal appraisal was "in accordance with" "nationally recognized appraisal standards."  Section 1206(a)(2)(D)(ii).  In their reply brief, Plaintiffs attack Maloy's March 2021 consulting report, AR 49582-96, but this takes them nowhere in establishing any violation of the exchange legislation.  Plaintiffs complain that the Forest Service did not provide Maloy with their expert Palmer's appraisal critiques.  Pls.' Reply 16-17.  But nothing in the exchange legislation requires the Forest Service (or its appraiser) to review an opposition appraisal.  "The APA give an

agency substantial discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (cleaned up).

Further, Palmer's critiques of Maloy did not even purport to be prepared in accordance with the Uniform Appraisal Standards for Federal Land Acquisitions ("UASFLA") even though UASFLA is one of the touchstone standards cited in Section 1206. Palmer stated that his opinions were prepared only in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP"), not with the UASFLA. *See* AR 47789, 47800, 47804, 47810, 47824, 47827, 47831, 47837, 47841, 47847. Palmer's opinions do not show the Forest Service was arbitrary and capricious under the exchange legislation, especially when Palmer did not tether his own opinions to both the UASFLA and USPAP standards cited in the exchange legislation.

Nor does a miniscule "scrivenor's error" in a few pages of Maloy's appraisal establish that the Forest Service was arbitrary and capricious. In his consulting report, Maloy clarified that his Federal lands appraisal verified comparable sales with an involved party, but in the "production process" of the final reports, "some Adobe Acrobat pages inadvertently hid the line noted for confirmation." AR 49587. That is why his report attached pages that correctly

Page 14      Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case
No. 3:22-cv-01981-AR

showed the verification parties that Maloy originally contacted.  *See* AR 49593-
96 (matching the pages in the original appraisal at AR 44514, 44522, 44528,
44536).  An inadvertent Adobe production issue, cleared up with the Forest
Service before the land exchange decision, does not show the agency was
arbitrary and capricious in ensuring its compliance with the exchange
legislation.  Further, before reaching its final decision on the land exchange,
the Forest Service publicly noted the comparables-verification question and
that Maloy had correctly undertaken verification.  AR 49923.

Plaintiffs otherwise argue that Maloy committed a "methodological
error" and that Maloy "admitted" that he relied on deficient information.  Pls.'
Reply 17 (citing AR 49587).  This is not true. Plaintiffs fail to identify any
Maloy error in the first place, much less any violation of a particular appraisal
standard he conceded or that would implicate the exchange legislation.

Plaintiffs further argue that the Maloy consulting report shows a NEPA
violation because "full appraisals must be submitted with" the Environmental
Impact Statement ("EIS").  Pls.' Reply 16-17.  Defendants address that NEPA
argument below in Section II.B. of the Argument.  In any event, the Maloy
consulting report was intended only to "provide information and clarification
related to the approved appraisal reports" as a supplementary aid in the Forest
Service's response to Plaintiffs' objections, rather than to serve as a stand-

Page 15     Defendants' Reply in Support of Cross-Motion for Summary
            Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case
            No. 3:22-cv-01981-AR

alone formal appraisal document.  AR 49584.

For these reasons, this Court should grant summary judgment to Defendants against Count 3 regarding the Forest Service's Federal lands appraisal review and approval.

## II.    The Forest Service complied with NEPA.

As Defendants explained, the Forest Service complied with NEPA's procedural obligations in its final EIS before reaching the May 2022 Record of Decision.  Summary judgment is appropriate against Plaintiffs' four NEPA counts.  Defs.' Mot. 14-32.  "[I]n determining whether [an EIS] complied with NEPA, a court should afford substantial deference to the agency."  *Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, 153 F.4th 869, 903 (9th Cir. 2025) (cleaned up).  This "includes deferring to the agency regarding what level of detail is required, what alternatives are feasible, and the scope of the environmental effects that the NEPA document will address."  *Id.*  "NEPA does not require the agency to weigh environmental consequences in any particular way."  *Seven Cnty. Infrastructure Coal., Inc. v. Eagle Cnty., Colo.*, 145 S. Ct. 1497, 1507 (2025).  "The bedrock principle of judicial review in NEPA cases can be stated in a word: Deference."  *Id.* at 1515.

In their reply, Plaintiffs fail to address most of Defendants' points.  They would concede, therefore, that it was appropriate for the Forest Service in the

EIS to use the wording "up to" to describe the exchange acreage (Count 1), and that NEPA does not govern the substance of the agency's chosen alternative (Count 2). *See* Defs.' Mot. 14-17 (addressing Count 1), 18-21 (addressing Count 2).

Plaintiffs' reply makes three limited arguments regarding Counts 3 and 4, which Defendants address below.

### A. Plaintiffs fail to establish a NEPA violation regarding reservation of a conservation easement.

Summary judgment is warranted against Plaintiffs' NEPA Count 4 regarding the range of NEPA alternatives. Plaintiffs argue that the Forest Service was required to analyze whether to reserve a wetland conservation easement "as part of the NEPA alternatives analysis" for the land exchange, but that the agency "violated NEPA when it made a pre-NEPA decision not to record a wetland conservation easement." Pls.' Reply 18-20.

Plaintiffs are wrong, because the exchange legislation established that reserving an easement is not solely a matter of agency discretion but instead a matter of mutual agreement between the Forest Service and Mt. Hood Meadows. Section 1206(a)(2)(G)(i) (2018) (providing that the Forest Service and Meadows "may mutually agree" to reserve a conservation easement); AR

49932-33 (explaining the Forest Service's interpretation of this provision to Plaintiffs' counsel).

The easement-reservation timing established in the exchange legislation shows that Congress carved the easement piece away from the NEPA process applicable to the land exchange. The legislation required that any mutually agreed easement "shall be finalized" not later than 120 days after the 2018 enactment of the Clarification Act. Section 1206(a)(2)(G)(i)(II). The legislation set the same deadline—not later than 120 days after enactment of the Clarification Act—for the Forest Service and Mt. Hood Meadows to select an appraiser to value the respective lands. Section 1206(a)(2)(D)(i). Congress therefore intended that the easement-reservation question be settled by the Forest Service and Meadows <u>before</u> any appraisal valuations were developed— and therefore before any determination of how to structure consideration of alternatives in the EIS and before any final decision on the land exchange.

As these points illustrate, Plaintiffs' NEPA argument demands that this Court ignore the deference that is the bedrock principle of NEPA judicial review. *See Seven Cnty.*, 145 S. Ct. at 1515. "[I]n determining whether [an EIS] complied with NEPA, a court should afford substantial deference to the agency." *Cascadia Wildlands*, 153 F.4th at 903 (cleaned up). This "includes

deferring to the agency" regarding "what alternatives are feasible, and the scope of the environmental effects that the NEPA document will address." *Id.*

Plaintiffs' NEPA argument would lead to a bizarre, unworkable result out of step with *Seven County* and *Cascadia Wildlands*. Under Plaintiffs' argument, the Forest Service would have needed, not later than 120 days after the Clarification Act's 2018 enactment, to produce not just a final EIS but also a final Record of Decision on the exchange and whether to reserve the conservation easement. This is further bizarre and unworkable because the Forest Service would be forced to reach a final decision on the land exchange without yet having appraisals for the Federal and non-Federal lands.

Nor does the case law Plaintiffs reference show any error by the Forest Service. *See* Pls.' Reply 18-19. In *Ritidian v. U.S. Department of Airforce*, 128 F.4th 1089 (9th Cir. 2025), the issue was whether NEPA applied at all to a federal undertaking. *Id.* at 1114. The same issue was present in *Stand Up for California! v. U.S. Department of Interior*, 959 F.3d 1154 (9th Cir. 2020). That issue is inapplicable here; the Forest Service complied with NEPA and prepared a full-blown EIS in reaching the land exchange decision.

The Forest Service undertook a robust NEPA review in reaching its land exchange decision and the issue is therefore the appropriate scope of the NEPA alternatives analysis, where *Seven County* and maximal deference to the

Page 19    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

agency are the bedrock for judicial review. *See Seven Cnty.*, 145 S. Ct. at 1511-13. The Forest Service was neither arbitrary nor capricious under NEPA.

### B. Under NEPA, the appraisals were not illegally excluded from the EIS.

As Defendants explained, summary judgment is warranted against Plaintiffs' NEPA Count 4 alleging the Forest Service violated a (now-rescinded)[2] NEPA regulation, 40 C.F.R. § 1502.19. *See* Defs.' Mot. 28-32. Plaintiffs argue that because the appendix for the final EIS did not include the land appraisals, the Forest Service was arbitrary and capricious.

Plaintiffs' reply, however, failed to respond to—and therefore concedes—two key points that Defendants established against this NEPA count. **First**, as Defendants established without any response from Plaintiffs, there is no violation because Congress in Section 1206(a)(2)(D)(iv) provided a specific timing provision for public review of the appraisals <u>in this land exchange</u> and superseded any generalized provision in the regulation that might otherwise apply. Even if 40 C.F.R. § 1502.19 sweeps so far as to apply to dollar-value appraisals in an EIS appendix, the regulation was superseded by the specific and contrary congressional requirement for this land exchange. Under Section 1206(a)(2)(D)(iv), Congress specified that the Forest Service make the

---

[2] *See* Defs.' Mot. 30 n.10.

Page 20    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

appraisals "available for public review" "[b]efore completing the land exchange." In the final EIS, the Forest Service informed the public of this congressional direction. AR 47106, AR 49933. Further, the final EIS announced that any member of the public could request a copy of the appraisals by email. AR 47106, AR 49938.

**Second**, as Defendants established without any response from Plaintiffs, Plaintiffs' NEPA count elevates form over substance because the Forest Service provided Plaintiffs with the appraisals years before the final EIS was published in February 2021. *See* AR 44637-38. Well before publication of the final EIS, Plaintiffs already had the appraisals in hand. *See* AR 49933 (noting that Thrive "already received the appraisals"); AR 49938 (noting that Thrive "was provided with the appraisals by 2019"). The Forest Service respected Plaintiffs' interest in the appraisals and engaged with Plaintiffs in a way that allowed Plaintiffs to engage their own expert during the administrative process and provide their valuation views to the agency. *See* AR 47778-82, 47789-865. The Forest Service also discussed the results of the appraisals in the draft Record of Decision that was published in February 2021 alongside the final EIS. *See* AR 46993, 46995. At most, therefore, any failure of a supposed regulatory requirement to attach the appraisals to the EIS itself was harmless error. S*ee Idaho Wool Growers Ass'n v. Vilsack*, 816

Page 21    Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case
No. 3:22-cv-01981-AR

F.3d 1095, 1104-05 (9th Cir. 2016) (concluding that the Forest Service's failure to undertake a NEPA duty was harmless error, and affirming summary judgment in favor of the agency).

Further, Plaintiffs' argument is unsupported that dollar-value appraisal documents must be included, in the first place, under NEPA in an EIS appendix. Plaintiffs cite no case law indicating that appraisals must be produced in this way. Instead, they split hairs over a related federal court NEPA opinion that recognized that land appraisals need not be produced because such documents "do not implicate the environmental concerns that NEPA addresses." *Colorado Wild Public Lands, Inc. v. Shoop*, No. 17-cv-01564-MSK, 2021 WL 1138061, * 8 (D. Colo. March 25, 2021). As *Shoop* found in the specific context of a challenge to a Forest Service land exchange decision, NEPA relates to "the protection of the environment" and the physical environment "cannot be reasonably understood as encompassing of parity in the value of the parcels to be exchanged." *Id.* at *8-*9.

Plaintiffs attempt to get out from under *Shoop* by arguing that that case involved a different NEPA regulation and that the regulation at issue here has a broader sweep that goes beyond "environmental documents." Pls.' Reply 20-21. But Plaintiffs would stretch NEPA too far. As the Supreme Court emphasized this year, an EIS under NEPA "must address the significant

Page 22    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

*environmental* effects" of a proposed action. *Seven Cnty.*, 145 S. Ct. at 1507 (emphasis added). NEPA does not require an agency to assess every impact or effect of a proposed action, "but only the impact or effect on the environment." *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772 (1983).

Plaintiffs' argument also runs aground on the bedrock principle of NEPA deference to an agency's judgment in determining what to present with a NEPA analysis. When "determining whether an agency's EIS complied with NEPA, a court should afford substantial deference to the agency." *Seven Cnty.*, 145 S. Ct. at 1511-12. Like the Forest Service found during the administrative objections process, the appraisals "relate to dollar valuations for real property parcels," whereas the EIS analyzed the "environmental effects of the land exchange as appropriate under NEPA." AR 49933.

The Forest Service was neither arbitrary nor capricious under NEPA.

//

//

//

Page 23    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

C.     **The Forest Service EIS rationally analyzed the environmental effects of the land exchange by assessing the effects of the maximal exchange acreage alternative.**

Finally, focusing back on their NEPA alternatives count (Count 3), Plaintiffs quibble over how the Forest Service EIS addressed alternatives and analyzed the environmental effects of the proposed land exchange.  Pls.' Reply 22-24.

It is telling that Plaintiffs' reply fails even once to acknowledge *Seven County*, which held that the highest deference applies to an agency's judgments regarding NEPA alternatives.  As *Seven County* established, when an agency makes judgments regarding NEPA alternatives, "a reviewing court must be at its most deferential."  *Seven Cnty.*, 145 S. Ct. at 1512 (cleaned up).  In assessing feasible alternatives under NEPA, "an agency will invariably make a series of fact-dependent, context-specific, and policy-laden choices about the depth and breadth of its inquiry—and also about the length, content, and level of detail of the resulting EIS."  *Id.* at 1513.

Nor do Plaintiffs address the citation in Defendants' earlier summary judgment brief to the Ninth Circuit's *Headwaters* decision.  *See* Defs.' Mot. 22. That case recognized that "an agency's consideration of [NEPA] alternatives is sufficient if it considers an appropriate range of alternatives, even if it does not consider every available alternative."  *Headwaters, Inc. v. Bureau of Land*

Page 24     Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case No. 3:22-cv-01981-AR

*Mgmt.*, 914 F.2d 1174, 1181 (9th Cir. 1990).  An agency need not discuss alternatives that are like alternatives actually considered, or alternatives that are infeasible.  *Id.* at 1180-81.

Plaintiffs' NEPA alternatives argument falls apart under *Seven County* and *Headwaters*.  The Forest Service made a rational judgment in the final EIS to analyze the environmental effects of an all-for-all exchange, which it undertook "in order to capture the full range of potential effects" of an exchange.  AR 47076; *see also* AR 47147.  The agency rationally found that given the necessary appraisal/valuation process, if some of the Federal (Government Camp) lands "are not ultimately agreed upon and authorized for exchange," then "the effects from expected future private development would be less than and within the effects studied herein."  AR 47076.  Similarly, if some of the non-Federal (Cooper Spur) lands "were retained by Mt. Hood Meadows, the retention of those lands would be akin to implementing the no-action alternative for that particular acreage."  *Id.*

Plaintiffs, however, criticize assessing the effects of an "all-for-all" exchange as an "extreme[]."  Pls.' Reply 22.  This is an odd critique given Plaintiffs' contention that the baseline point of the exchange legislation was to maximize the acreage exchanged regardless of other considerations or legislative conditions.  Further, Plaintiffs are wrong that the Forest Service

Page 25    Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Thrive Hood River, et al. v. Loftsgaarden, et al.*, Case
No. 3:22-cv-01981-AR

did not consider other alternatives on the continuum between no action and an all-for-all exchange. The Forest Service, in fact, made clear that a smaller acreage configuration than "all-for-all" could occur.  AR 47076, 47147.   And Plaintiffs fail to rebut the agency's rational judgment that the environmental effects of a smaller exchange lay within the footprint of the all-for-all alternative's effects.  *See id*.  The final EIS abided by NEPA; it reasonably "assessed the environmental effects of the land exchange" in "accounting for the environmental effects if every potential land parcel were exchanged."  AR 49932.

The Forest Service was neither arbitrary nor capricious under NEPA.

## CONCLUSION

For these reasons, this Court should grant Defendants summary judgment against all of Plaintiffs' claims.

Dated this 5th day of December 2025.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney